Joshua M. George, SBN: 244565
Email: george@ammclgaw.com
Michelle L. Gearhart, SBN: 263573
Email: gearhart@ammcglaw.com
ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP
*Mailing Address*: Post Office Box 3835
San Luis Obispo, CA  93403-3835
*Physical Address*: 6633 Bay Laurel Place
Avila Beach, CA  93424
Tele.: (805) 543-0990; Fax: (805) 543-0980

Attorneys for Defendant, City of San Luis Obispo

Christine Dietrick, SBN: 206539
Email: cdietrick@slocity.org
CITY ATTORNEY, CITY OF SAN LUIS OBISPO
City Attorney's Office
990 Palm Street
San Luis Obispo, CA 93401
Tele: (805) 781-7140

Attorney for Defendant, City of San Luis Obispo

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

PAMELA LANGLEY, RENEE ASKEW, AARON STINNET, EDWARD MARQUEZ, CHRISTINA MALMEN, individuals; and HOPE'S VILLAGE OF SLO, a non-profit corporation,

        Plaintiffs,

vs.

CITY OF SAN LUIS OBISPO, a municipality; and DOES 1 through 10, inclusive,

        Defendants.

Case No.: 2:21-cv-07479 CJC (ADSx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN LUIS OBISPO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**[Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6)]**

**Date: February 14, 2022**
**Time: 1:30 p.m.**
**Ctrm: 9B**

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................1

II.  BACKGROUND ....................................................................................4

III. LEGAL STANDARD ............................................................................7

IV.  ARGUMENT .........................................................................................8

   A. The Court Should Dismiss Hope's Village Because It Lacks
      Article III Standing ........................................................................8

   B. The Court Should Dismiss the First Cause of Action Because the
      Ordinances Do Not Violate the Cruel and Unusual Punishment
      Clause Under *Martin* ...................................................................11

     1. *Martin* does not proscribe time, place, and manner restriction
        on outdoor camping and sleeping..........................................11

     2. The City's ordinances are valid time, place, and manner
        restrictions..............................................................................14

     3. Plaintiffs fail to allege that shelter was unavailable ................16

   C. The Court Should Dismiss the Second Cause of Action Because
      Plaintiffs Have Not Been Assessed "Grossly Disproportionate"
      Fines Within the Meaning of the Excessive Fines Clause ...............18

   D. The Court Should Dismiss the Third Cause of Action Because
      Plaintiffs' Property Has Not Been Unreasonably Seized.................19

   E. The Court Should Dismiss the Fourth Cause of Action Because
      the City Did Not Affirmatively Expose Plaintiffs to Greater
      Danger...........................................................................................21

   F. The Court Should Dismiss Plaintiffs' Fifth, Sixth, and Seventh
      Causes of Action Because Plaintiffs Have Not Pleaded the Denial
      of Meaningful Access to City Programs..........................................22

i

G.   The Court Should Dismiss the Eighth Cause of Action Because Plaintiffs Have Failed to Allege a Predicate Claim for Their Declaratory Relief Claim ....................................................24

V.   CONCLUSION ..........................................................24

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aitken v. City of Aberdeen*
   393 F. Supp. 3d 1075 (W.D. Wash. 2019)..................................................13

*Allen v. City of Sacramento*
   234 Cal.App.4th 41 (2015)..................................................................14

*Ashcroft v. Iqbal*
   556 U.S. 662, 678 (2009)..............................................................7, 8

*Avirez, Ltd. v. Resolution Trust Corp.*
   876 F. Supp. 1135 (C.D. Cal. 1995) .......................................................24

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1988)...............................................................8

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007).......................................................................7

*Blake v. City of Grants Pass*
   No. 1:18-cv-01823-CL, 2020 U.S. Dist. LEXIS 129494 (D. Or. July 22, 2020)15

*Bonner v. Lewis*
   857 F.2d 559 (9th Cir. 1988)............................................................23

*Catchings v. City of L.A.*
   2020 WL 5875100 (C.D. Cal. Aug. 7, 2020)................................................13

*Chandler v. State Farm Mut. Auto. Ins. Co.*
   598 F.3d 1115 (9th Cir. 2010)............................................................8

*Clapper v. Amnesty Intern. USA*
   568 U.S. 398 (2013)......................................................................10

*Clark v. Community for Creative Non-Violence*
   468 U.S. 288 (1984)......................................................................15

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*
   489 U.S. 189 (1989)......................................................................21

i

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

*El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*
   959 F.2d 742 (9th Cir. 1991)............................................................................10

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*
   666 F.3d 1216 (9th Cir. 2012)...........................................................................9

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
   528 U.S. 167 (2000).............................................................................................9

*Gladstone Realtors v. Village of Bellwood*
   441 U.S. 91 (1979)...............................................................................................9

*Gomes v. Cty. of Kauai*
   481 F. Supp.3d 1104 (D. Haw. 2020)..............................................................13

*Hollingsworth v. Perry*
   570 U.S. 693 (2013).............................................................................................9

*Housing is a Human Rights Orange Cty. v. Cty. of Orange*
   2019 WL 8012374 (C.D. Cal. Oct. 28, 2019).........................................10, 13

*Jones v. City of Los Angeles*
   444 F.3d 1118 (9th Cir. 2006).........................................................................12

*Kennedy v. Ridgefield City*
   439 F.3d 1055 (9th Cir. 2006).........................................................................21

*LA Alliance for Human Rights v. Cty. of L.A.*
   14 F.4th 947 (9th Cir. 2021) .............................................................................9

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
   624 F.3d 1083 (9th Cir. 2010).........................................................................10

*Lavan v. City of L.A.*
   693 F.3d 1022 (9th Cir. 2012).........................................................................19

*Le Van Hung v. Schaaf*
   2019 WL 1779584 (N.D. Cal. Apr. 23, 2019) ..........................................13, 14

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992).............................................................................................9

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

ii

*Madsen v. Women's Health Center, Inc.*
   512 U.S. 753 (1994) ................................................................14

*Marcus v. ABC Signature Studios, Inc.*
   279 F. Supp. 3d 1056 (C.D. Cal. 2017) .......................................4, 24

*Martin v. City of Boise*
   920 F.3d 584 (9th Cir. 2019)....................................3, 11, 12, 14, 16

*Mirelle v. City of Oakland*
   2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ...............................13

*Monell v. New York City Dep't of Social Servs.*
   436 U.S. 658 (1978) ................................................................21

*Nat'l Council of La Raza v. Cegavske*
   800 F.3d 1032 (9th Cir. 2015)...................................................10

*Pareto v. F.D.I.C.*
   139 F.3d 696 (9th Cir. 1998)......................................................8

*Patel v. Kent Sch. Dist.*
   648 F.3d 965 (9th Cir. 2011).....................................................21

*Payan v. L.A.  Cmty. College. Dist.*
   11 F.4th 729, 738 (9th Cir. 2021) ...........................................22, 23

*Pimentel v. City of Los Angeles*
   974 F.3d 917 (9th Cir. 2020).................................................18, 19

*Robinson v. California*
   370 U.S. 660 (1962) ................................................................14

*Shipp v. Schaaf*
   379 F. Supp. 3d 1033 (N.D. Cal. 2019) ....................................13, 15

*Spokeo, Inc. v. Robins*
   578 U.S. 330 (2016) .................................................................9

*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009).................................................................9

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

iii

*Tobe v. City of Santa Ana*
  9 Cal.4th 1069 (1995) .......................................................................14

*Towers v. City of Chicago*
  173 F.3d 619 (7th Cir. 1999)............................................................19

*Turner v. City & Cty. of San Francisco*
  788 F.3d 1206 (9th Cir. 2015)............................................................8

*United States v. Bajakajian*
  524 U.S. 321 (1998)......................................................................3, 18

*United States v. Jacobsen*
  466 U.S. 109 (1984).........................................................................19

*Warren v. City of Chico*
  No. 2:21-CV-00640-MCE-DMC, 2021 U.S. Dist. LEXIS 128471
  (E.D. Cal. July 8, 2021)...................................................................14

*Winslow v. City of Oakland*
  2020 WL 1031759 (N.D. Cal. Mar. 3, 2020).....................................13

*Yeager v. City of Seattle*
  2020 WL 7398748 (W.D. Wash. Dec. 17, 2020) ..................13, 14, 15

*Young v. City of Los Angeles*
  2020 WL 616363 (C.D. Cal. Feb. 10, 2020)................................12, 20

**Statutes**

28 C.F.R. § 35.130(b)(7) ........................................................................23

29 U.S.C. § 794....................................................................................23

42 U.S.C. § 12132................................................................................22

California Government Code section 11135 .....................................22, 23

San Luis Obispo Municipal Code § 10.34.020(A)...................................5

San Luis Obispo Municipal Code § 12.04.020(A)...................................5

San Luis Obispo Municipal Code § 12.20.40(E) ....................................5

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

iv

San Luis Obispo Municipal Code § 12.22.050(B), (P) ............................................5

San Luis Obispo Municipal Code § 12.23.030(B), (I) ............................................5

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

v

# I.    INTRODUCTION

There is no dispute that California is experiencing a homelessness crisis that shows no signs of abating anytime soon.[1] The structural forces underlying this long-term trend have placed municipal governments like the City of San Luis Obispo ("City") in the unenviable position of attempting to devise local solutions to a statewide problem. The City has been a leader in these efforts for more than three decades, pioneering progressive programs, partnerships, and affordable housing policies. In 1993, for example, the City contributed property and funding to build the first comprehensive homeless services center in San Luis Obispo County, and then followed that up by partnering in the expansion of the center in 2018. *See* Request for Judicial Notice ("RJN"), Ex. 2. The City also maintains a safe parking site connected to supportive services for the unhoused, employs a full-time social worker dedicated to providing homeless services, and assigns police officers with special training to homeless support and response. *See* RJN, Ex. 3.  And although the plaintiffs plead that the City hosts a relatively modest unhoused population—just over 300 people, compared to 887 in nearby Santa Barbara (*see* RJN, Ex. 4), the City is redoubling its efforts to put an end to homelessness within its borders.

Among other things, the City has undertaken to hire a second dedicated social worker to expand homeless services, created a Mobile Crisis Unit to support chronically homeless community members, and committed $747,285 of its police department's budget to homeless outreach. *See* RJN, Ex. 3. The City has paired these efforts to provide shelter and support to the unhoused members of its community with measures to ensure that public spaces remain safe, accessible,

---

[1] As of January 2020, California was home to 27% of the Nation's unhoused population, with a 16% increase in California's homeless population between 2018 and 2019. *See* RJN, Ex. 1: Legislative Analyst's Office, *California's Homelessness Challenges in Context* 4 (2021).

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

and sanitary. Recent experience in San Luis Obispo and elsewhere in California has shown what happens when this is not done: sprawling tent cities take root and become breeding grounds for crime and environmental hazards that pose serious risks to the safety of both the unhoused individuals who live there and the public at large. *See* RJN, Exs. 5, 6. These encampments are especially perilous for the unhoused, in light of their unique vulnerabilities, and can derail their transition to safe and stable housing. *See* RJN, Ex. 1 (observing that 23% of California's homeless population is severely mentally ill and 17% suffers from a chronic substance abuse disorder).

Plaintiffs are five homeless individuals and an association who take issue with the City's continued enforcement of ordinances regulating the ability to camp on public property and to occupy such property at specified times. Although such time, place, and manner regulations are commonplace, Plaintiffs claim that they violate a battery of federal and state laws, including (1) the Eighth Amendment's Cruel and Unusual Punishment Clause, (2) the Eighth Amendment's Excessive Fines Clause, (3) the Fourth Amendment's protection against unreasonable searches and seizures, (4) the Fourteenth Amendment, (5) the Americans with Disabilities Act ("ADA"), (6) the Rehabilitation Act, and (7) California Government Code section 11135. Because Plaintiffs fail to adequately plead a right to relief under any of these causes of action, however, the Complaint should be dismissed.

***First***, Plaintiff Hope's Village should be dismissed because it lacks Article III standing to assert these claims. Although it relies on associational standing, this is not a blank check to challenge laws in which an organization has some vague and undefined interest. Rather, associational standing is established only where the defendant's conduct directly frustrates the association's mission and causes the association to divert resources from other activities. Hope's Village cannot satisfy this standard because the Complaint does not and cannot allege that it has diverted

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

2

resources in response to the enforcement of the City's ordinances specifically, as distinct from the problem of homelessness in the City more generally.

**Second**, Plaintiffs have not stated a claim under the Eighth Amendment's Cruel and Unusual Punishment Clause. They invoke the Ninth Circuit's recent decision in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), which held that, "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter," *id.* at 616, but the court in *Martin* emphasized that its "holding is a narrow one" that does not apply to circumstances like those alleged here, *id.* at 617. In particular, *Martin* makes clear that "an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible," and that its "holding does not cover individuals who *do* have access to adequate temporary shelter . . . but choose not to use it." *Id.* at 617 n.8. Because the Complaint does not allege that the ordinances "punish[] a person for lacking the means to live out the 'universal and unavoidable consequences of being human,'" *id.*, this claim should be dismissed.

**Third**, Plaintiffs fail to state a claim under the Excessive Fines Clause of the Eighth Amendment, which prohibits the imposition of fines that are "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Here, only two Plaintiffs have been fined at all, and the amount of those fines—$861 and $130—clearly "bear[s] *some relationship* to the gravity of the offense that it is designed to punish." *Id.* (emphasis added). And, the bulk of the fees are Court, not City, assessed fees.

**Fourth**, Plaintiffs do not allege facts from which the Court could reasonably conclude that the City violated their Fourth Amendment rights. Although the Complaint alleges that the City "seized and destroyed the personal property of" three Plaintiffs, Complaint ¶ 192, its threadbare allegations do not establish that these seizures were *unreasonable*. On the contrary, the Complaint

3

1  acknowledges that the City gave notice of encampment cleanups well before
2  allegedly seizing any personal property left behind. *See, e.g.*, *id.* ¶¶ 99-101.

3          ***Fifth***, Plaintiffs have not stated a claim for state-created danger under the
4  Due Process Clause. This theory applies only if the government affirmatively
5  exposes a plaintiff to a danger he would not otherwise face, but Plaintiffs have not
6  plausibly alleged that the City's cleanup of encampments that have become public
7  health hazards exposes them to any new or unique dangers.

8          ***Sixth***, Plaintiffs assert that the City's ordinances have an impermissible
9  "disparate impact" on the disabled under assorted federal and state laws. But even
10 if a disproportionate percentage of unhoused individuals have a disability, the
11 Complaint does not plausibly allege that the City's neutral enforcement of its
12 ordinances has denied Plaintiffs meaningful access to government programs by
13 reason of their disability.

14         ***Seventh***, and finally, Plaintiffs' claim for declaratory relief should be
15 dismissed in the absence of any viable underlying claims. *See Marcus v. ABC*
16 *Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1073 (C.D. Cal. 2017) ("'[A]bsent
17 a viable underlying claim,' Plaintiff is not entitled to the declaratory relief he
18 requests.'").

19         The City shares Plaintiffs' concern with the growing homelessness crisis in
20 California, and it has expended millions of dollars and untold time and energy
21 devising innovative solutions to address the problem within its jurisdiction. While
22 Plaintiffs may disagree with some of the City's policy choices, they have failed to
23 adequately plead that those policies violate any law. As a result, the Complaint
24 should be dismissed.

25 **II.    BACKGROUND**

26         The City's Ordinances. The City has taken a comprehensive approach to
27 addressing the homelessness crisis in its borders. In addition to hiring dedicated
28 personnel to conduct outreach to its unhoused population, it has provided a wide

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

4

array of homeless services, including temporary shelter and permanent housing assistance. *See* RJN, Ex. 3. The results have been dramatic. Since the opening of 40 Prado Homeless Services Center ("40 Prado"), 2,044 people received services and 299 were housed. *See id.* at 2.

The City has enacted a number of generally applicable ordinances for the protection of public health, safety, and the environment, which set time, place, and manner restrictions on the use of public property. At issue in this case are:

- San Luis Obispo Municipal Code ("SLOMC") § 10.34.020(A): "No occupied vehicle shall be parked for the purposes of allowing the occupants thereof to establish a temporary or permanent residential use, camp or sleep within the vehicle during the hours of ten p.m. to six a.m."

- SLOMC § 12.04.020(A): "It is unlawful for any person to make any excavation or encroachment in, under or over any road or other public place, including highway, alley, street, avenue, place, sidewalk, path, walk, park, plaza, boulevard or right-of-way or any other public place in the city whether or not currently improved, except in the manner and mode provided in this chapter."

- SLOMC § 12.20.40(E): "It shall be unlawful to enter, remain, or stay in any public park between the hours of ten p.m. and five a.m. of the following day without approval from the director."

- SLOMC § 12.22.050(B): "Open space lands where public access is permitted shall be open to the public from dawn to dusk. It shall be unlawful to enter or remain within such lands between one hour after sunset and one hour before sunrise of the following day without approval from the director."

- SLOMC § 12.22.050(P): "Travel in city open space lands is generally restricted to trails designated for such travel, and off-trail travel is prohibited in places where it is unsafe to so travel, or where such travel can result in erosion problems or resource damage . . . . However, city open space lands are open to off-trail travel in areas where it is safe to do so and such travel is not damaging to the environment."

- SLOMC § 12.23.030(B), (I): "It shall be unlawful and a violation of this chapter for any person to engage in or maintain, or for any property owner to allow or maintain, any of the following activities or conditions

5

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

in regulated areas"—creeks, riparian areas, and public property adjacent to riparian areas—including "[s]taying or camping overnight" and "[t]raveling outside of designated paths."

*See* Complaint, ❡ 55.

The Shelter Facility. Approximately 300 unsheltered individuals live in the City. Complaint ¶ 2. The Community Action Partnership of San Luis Obispo operates 40 Prado in partnership with the City, the County, and several other non-profit community partners. *Id*. ¶¶ 4, 36. In addition to shelter, 40 Prado offers day services, night services, meals, and toiletries. *Id*. ¶ 36. The City Council allocates Community Development Block Grant Funds to 40 Prado—$74,453 for 2020 and $70,963 for 2021. *Id*. ¶ 22. Many individuals who seek services at 40 Prado have either psychiatric/emotional conditions, post-traumatic stress disorder, or a physical disability. *Id*. ¶ 33. 40 Prado prioritizes its 124 beds for individuals who are seeking employment, part of a recovery program, or fleeing domestic violence; next in line are families, seniors, and in-county residents. *Id*. ¶ 47. Both 40 Prado and the City offer safe parking locations for individuals who sleep in their vehicles. *Id*. ¶ 48. Prado also requires shelter residents to contribute to the overall maintenance of the facility by signing up to complete certain chores. *Id*. ¶ 46.

The Individual Plaintiffs. Plaintiffs Pamela Langley, Renee Askew, Aaron John Stinnet, Edward Marquez, and Christina Malmen are unhoused residents of the City. *Id*. ¶ 19. For many years, these Plaintiffs have made their home in areas next to the San Luis Obispo Creek and the Bob Jones Trail. *Id*. ¶ 53. They claim that they cannot stay at 40 Prado for similar reasons related to physical and psychological disabilities. For example, Ms. Langley alleges that "the loud, crowded environment there exacerbates the symptoms of her disabilities"—specifically, PTSD and anxiety. *Id*. ¶¶ 86, 89. Ms. Askew claims that her PTSD, anxiety, severe depression, and arthritis require her to reside on the Bob Jones Trail rather than a congregate setting like 40 Prado. *Id*. ¶¶ 105-06, 116. Mr.

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

6

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP

Attorneys at Law

Stinnet has been homeless for the past 18 years (which has led to 500 documented interactions with the City), but has not tried to obtain shelter at 40 Prado because the group setting and restrictive rules would allegedly trigger his ADD, PTSD, anxiety, and depression. *Id*. ¶¶ 120-23. Mr. Marquez, who allegedly has PTSD, Bipolar Disorder, and ADHD, has stayed at an encampment near Ontario Road at the Octagon Barn rather than attempting to obtain shelter. *Id*. ¶¶ 131, 136. And Ms. Malmen alleges that she became disabled as a result of a car accident and currently lives in her RV, although she does not plead that she has attempted to park in any of the safe parking locations available in the City. *Id.* ¶¶ 139-44.

    <u>The Associational Plaintiff.</u>  Hope's Village is a nonprofit corporation whose mission is to build a sustainable community village for unhoused veterans and their families. *Id.* ¶ 145. Hope's Village operates programs to assist unhoused people, providing (1) mobile showers for unhoused persons, (2) temporary shelter at local motels, (3) recreational vehicles and vans to unhoused persons, (4) transportation for family reunification outside of the City, (5) outreach and education to the community on homelessness issues, and (6) essential basic supplies to people experiencing homelessness. *Id*. ¶¶ 20, 148. During the pandemic, Hope's Village chose to spend funds booking motel rooms for shelter residents, and on tents, masks, hand sanitizer, and other supplies, to protect against COVID-19. *Id.* ¶¶ 158, 160.

## III.   LEGAL STANDARD

    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiffs' allegations. To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

7

Neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will meet this standard. *Twombly,* 550 U.S. at 555. Establishing the plausibility of a complaint's allegations is a two-step process that is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In assessing the adequacy of a complaint, the court accepts pleaded facts as true and construes them in the light most favorable to the plaintiff. *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court is not required to accept as true legal conclusions couched as factual allegations, *Ashcroft*, 556 U.S. at 678, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss," *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

## IV.   ARGUMENT

### A.   The Court Should Dismiss Hope's Village Because It Lacks Article III Standing.

Hope's Village lacks Article III standing to join in each of the eight causes of action alleged against the City. Because Article III's standing requirements limit subject matter jurisdiction, a Rule 12(b)(1) motion is the proper way to challenge a plaintiff's standing. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). Standing must be present in every case and cannot be waived. *United States v. Hays*, 515 U.S. 737, 742 (1995).

Three elements of Article III establish "the irreducible constitutional minimum" for standing: the plaintiff must show (1) a concrete and particularized

Adamski Moroski Madden Cumberland & Green llp
Attorneys at Law

8

injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element of Article III standing." *Id.* The injury-in-fact requirement ensures that the plaintiff has a sufficient stake in the outcome of the litigation to make it a "case or controversy" under Article III. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979); *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir. 1988).  No matter how sincere a party's interest in a dispute, it is insufficient unless he or she has a "direct stake" in the litigation's outcome. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

Hope's Village has not attempted to plead organizational standing—the theory by which an association litigates claims on behalf of its members. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000). The Complaint identifies no member who has a valid claim against the City. *Summers v. Earth Island Inst.,* 555 U.S. 488, 499 (2009). Nor does the Complaint establish that any members of Hope's Village would have standing to raise an individual claim. *LA Alliance for Human Rights v. Cty. of L.A.,* 14 F.4th 947, 960 (9th Cir. 2021).

An association such as Hope's Village sometimes has standing to pursue claims in its own right rather than as a representative of its members.  To bring such a claim, Hope's Village must establish that the City's conduct created "a drain on its resources from both a diversion of its resources and frustration of its mission.'" *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (internal citation omitted). Here, Hope's Village alleges that its "mission is to work to build a sustainable community village for unhoused Veterans and their families. Hope's Village operates various programs to assist unhoused people." *See* Complaint ¶ 20; *see also id.* ¶¶ 145-57.

9

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

The associational theory of standing fails here because the injuries pleaded by Hope's Village are not traceable to the challenged ordinances or redressable by an order enjoining their enforcement. Hope's Village must allege sufficient facts demonstrating that conduct *by the City* "perceptibly impaired" its organizational mission or caused a diversion of resources from other activities. *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991). But Hope's Village allegedly expended resources responding to *COVID-19*. Complaint ¶¶ 4-5, 79-85. For example, the Complaint alleges that Hope's Village "asked the *director of 40 Prado* for assistance in moving unhoused people into motels temporarily during the pandemic" and then spent its own funds "booking motel rooms to ensure the safety of its shelter residents" when the "*shelter* declined to do so." *Id.* ¶ 158 (emphasis added). The Complaint also alleges that Hope's Village purchased tents, masks, hand sanitizer, and other supplies to protect against COVID-19. *Id.* ¶¶ 159-60.

The City was not the "but for" cause of the pandemic or the costs Hope's Village incurred providing pandemic-related services. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039-40 (9th Cir. 2015). The ordinances challenged in this case have nothing to do with motel funding or pandemic supplies. These "self-inflicted" costs "are not fairly traceable" to the City's conduct. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 418 (2013). And a court order enjoining these ordinances will do nothing to redress the expenditures of these funds. At bottom, Hope's Village cannot bootstrap itself into court by *unilaterally choosing* to pay for hotel rooms based on its factually unsupported concern about local shelters during COVID-19. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

There is no associational standing here for the same reason as in *Hous. is a Human Rights Orange Cty. v. Cty. of Orange*, 2019 WL 8012374 (C.D. Cal. Oct. 28, 2019). The associational plaintiffs in that case had a mission to establish a

10

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

year-round emergency shelter and resource center, and to provide assistance to persons experiencing homelessness. *Id*. at *4. The district court granted the City of San Clemente's motion to dismiss, stating the associations failed to allege an injury or otherwise explain how they have standing to pursue an Eighth Amendment claim for damages. Allegations relating to the plaintiffs' provision of services to homeless persons did not adequately allege the "causal connection between the injury" and the defendant's complained-of conduct, or that it is likely "that the injury will be redressed by a favorable decision." *Id*.

Hope's Village lacks standing and its claims should be dismissed without leave to amend.

**B.     The Court Should Dismiss the First Cause of Action Because the Ordinances Do Not Violate the Cruel and Unusual Punishment Clause Under *Martin*.**

Plaintiffs allege that the City's enforcement of certain municipal codes against unhoused people, "make it a crime for homeless individuals to simply exist in certain public areas and thus punish Plaintiffs and other homeless individuals by virtue of their homelessness." Complaint ¶ 169. They ground this claim in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) (*Martin*). But unlike the plaintiffs in *Martin*, they do not plead a single instance of a citation against a homeless individual for simply "existing" in a public space.

**1.     *Martin* does not proscribe time, place, and manner restrictions on outdoor camping and sleeping.**

In *Martin*, the plaintiffs challenged the City of Boise's enforcement of certain ordinances that effectively prohibited sitting, lying, or sleeping on *any* public property. The Ninth Circuit held that "an ordinance violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them." 920 F.3d at 604. "[A]s long as there is no option of sleeping indoors, the

11

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

1   government cannot criminalize indigent, homeless people for sleeping outdoors,
2   on public property, on the false premise they had a choice in the matter." *Id.* at
3   617. The express rationale of *Martin* is that the government cannot punish
4   *involuntary* conduct that is unavoidably related to the status of being homeless. *Id.*

5       The Eight Amendment, however, does not forbid the City to set time, place,
6   and manner regulations that govern where, when, and how homeless individuals
7   may occupy public property. The *Martin* holding was expressly narrow. The
8   Ninth Circuit took pains not to "'dictate to the City that it must provide sufficient
9   shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the
10  streets . . . at any time and at any place.'" *Id.* (quoting *Jones v. City of Los
11  Angeles*, 444 F.3d 1118 (9th Cir. 2006)). The court also stated that "[e]ven where
12  shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at
13  particular times or in particular locations might well be constitutionally
14  permissible." *Id.* at 617 n.8.

15      *Martin* makes clear that time, place, and manner regulations of public
16  camping are constitutional. There, the Ninth Circuit held that the City of Boise
17  had violated the Eighth Amendment by criminalizing conduct that was
18  "involuntary and inseparable from [the] status" of being homeless. 920 F.3d at
19  617. The homeless individuals' conduct was involuntary, the panel held, because
20  the "sweeping" Boise ordinance prohibited sitting, lying, or sleeping in *all* public
21  places. *Id.* at 618. If, by contrast, someone voluntarily declined adequate
22  temporary shelter, the enforcement of the ordinance would not criminalize
23  homelessness. *Martin*, 920 F.3d at 617 n.8.

24      Other federal courts have recognized the limits on the holding in *Martin*.
25  For example, in *Young v. City of Los Angeles*, 2020 WL 616363 (C.D. Cal.
26  Feb. 10, 2020), the court properly acknowledged that the holding in *Martin* "was
27  narrow and did not 'dictate to the City that it must provide sufficient shelter for
28  the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets . . . at

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

12

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

1    any time and at any place.'" *Id*. at \*4. The plaintiff in *Young* claimed "that the

2    City has been depriving him of his right to sleep on public streets in Los Angeles

3    for the past three years by taking down encampments and forcing him to move."

4    *Id*. at \*5. The district court properly rejected this contention because, under

5    *Martin*, "the Eighth Amendment only bars the City from criminally prosecuting

6    Plaintiff for sleeping on public streets when he has no other place to go to." *Id*.

7        Other post-*Martin* decisions have similarly declined to expand its narrow

8    holding beyond complete bans of being homeless in public.  *See Aitken v. City of*

9    *Aberdeen*, 393 F. Supp. 3d 1075, 1081-82 (W.D. Wash. 2019) ("In keeping with

10   *Martin's* self-proclaimed restraint, courts have been reluctant to stretch the ruling

11   beyond its context of total homelessness criminalization."); *see also Yeager v. City*

12   *of Seattle,* 2020 WL 7398748, at \*5 (W.D. Wash. Dec. 17, 2020) (same); *Gomes*

13   *v. Cty. of Kauai*, 481 F. Supp.3d 1104, 1108 (D. Haw. 2020) (same); *Hous. is a*

14   *Human Rights*, 2019 WL 8012374, at \*5 (same). As those and other courts have

15   recognized, "*Martin* does not establish a constitutional right to occupy public

16   property indefinitely at Plaintiffs' option." *Miralle v. City of Oakland,* 2018 WL

17   6199929, at \*2 (N.D. Cal. Nov. 28, 2018) (allowing city to clear out a specific

18   homeless encampment); *Le Van Hung v. Schaaf*, 2019 WL 1779584, at \*5 (N.D.

19   Cal. Apr. 23, 2019) (same); *Shipp v. Schaaf*, 379 F. Supp. 3d 1033, 1037 (N.D.

20   Cal. 2019) ("the City's decision to require Plaintiffs to temporarily vacate their

21   encampment does not, by itself, implicate any criminal sanctions that would

22   trigger Eighth Amendment protections"); *Catchings v. City of L.A.*, 2020 WL

23   5875100, at \*7 (C.D. Cal. Aug. 7, 2020) (same); *Winslow v. City of Oakland*,

24   2020 WL 1031759, at \*3 (N.D. Cal. Mar. 3, 2020) (same).

25       Time, place and manner restrictions have been held valid in other

26   constitutional contexts to ensure "public safety and order," as well as "the free

27   flow of traffic on public streets and sidewalks," *Madsen v. Women's Health*

28

13

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

*Center, Inc.*, 512 U.S. 753, 768 (1994). As explained next, the ordinances challenged here further these same interests.

### 2. The City's ordinances are valid time, place, and manner restrictions.

Plaintiffs claim that the City's enforcement of its otherwise valid time, place, and manner restrictions are unconstitutional as applied against unhoused individuals because the City "punishes them by virtue of their homelessness." Complaint ¶ 55. Here, the "constellation of local ordinances" that Plaintiffs claim "punish" homelessness are Municipal Codes that prohibit discrete conduct, in specific locations, during specified times. Specifically disallowed is: overnight camping in vehicles on certain City property as well as near a creek; being in parks and open spaces after dark; and traveling outside of designated trails and paths near creeks. Complaint, ℙ 55.

An ordinance that punishes status violates the Eighth Amendment; an ordinance that punishes specific conduct does not. *See Allen v. City of Sacramento*, 234 Cal.App.4th 41, 57, 60 (2015) (discussing *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1105 (1995) and *Robinson v. California*, 370 U.S. 660, 667 (1962) and holding the challenged ordinance punished specific acts relating to camping, not homelessness.) Similarly, each of the ordinances challenged here prohibit specific conduct at certain times and places. These ordinances are constitutional because they do not individually or collectively ban sitting, lying, or sleeping on all public property at all times. Unlike the ordinances at issue in *Martin*, they do not prohibit sitting, lying, or sleeping on all public property at all times.[2] Additionally, like the municipalities in *Yaeger*, *Mirelle*, *Le Van Hung*,

---

[2] The City's ordinances are also not like the ordinances challenged in *Warren v. City of Chico*, No. 2:21-CV-00640-MCE-DMC, 2021 U.S. Dist. LEXIS 128471, at *4 (E.D. Cal. July 8, 2021), which made it unlawful for any individual to sit, lie, stand, or sleep on *any* public property within the City without being subject to

14

*Shipp*, and *Clark*, the City can require Plaintiffs to vacate encampments because, "while *Martin* limits localities' ability to arrest their homeless residents for the act of living in the streets when there is nowhere else for them to go, it does [not] create a right for homeless residents to occupy indefinitely any public space of their choosing." *Le Van Hung*, 2019 WL 1779584, at *5.

The challenged ordinances serve important government interests. In *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984), the United States Supreme Court held that the federal government could ban sleeping in its public parks to further its substantial interest in maintaining the parks in an attractive and intact condition. *Id.* at 293, 296. "To permit camping—using these areas as living accommodations—would be totally inimical to" the purposes of the public property. *Id.* at 296; see also *Yeager, supra*, 2020 U.S. Dist. LEXIS 237717, at *13 (noting the governmental interests in clearing an encampment in a City park where there had been at least five fires, two medical calls, and where members of the encampment had become increasingly violent).

In short, the Constitution allows the government to regulate time, place, and manner of protected activities. The City has done just that here. Plaintiffs have alleged only that city ordinances "make[] it a crime for homeless individuals to exist in *certain* public areas." Complaint ¶ 55 (emphasis added).  They have not plausibly pleaded that they were cited for *involuntary* conduct, because the ordinances permitted them, for example, to relocate to another public space to accommodate the City's cleanup activities at a particular location. Because the ordinances leave open alternative avenues for being on public property, the City has not criminalized involuntary conduct associated with the status of being a homeless individual. *See Martin*, 920 F.3d at 617 n.8.

criminal penalties, or *Blake v. City of Grants Pass*, No. 1:18-cv-01823-CL, 2020 U.S. Dist. LEXIS 129494, at *19 (D. Or. July 22, 2020), which prohibited camping in *all* public spaces in Grants Pass at *all* times, including parks.

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

### 3.    Plaintiffs fail to allege that shelter was unavailable.

Plaintiffs face an additional hurdle because the holding of *Martin* also "does not cover individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it." 920 F.3d at 617 n.8. The reason why, as explained above, is that application of the Eighth Amendment under *Martin* depends on whether Plaintiffs were punished for "involuntary" conduct. *Id*. at 617. To bring *Martin* claims, Plaintiffs must plead that shelter was unavailable to them at the time they received a citation.

Plaintiffs have pled that shelter was in fact available to them, but they have chosen not to utilize it for various personal reasons.  Plaintiffs plead that they have not been permitted to remain in their preferred place of residence, continuously, without interruption, for unlimited periods of time. Plaintiffs fail to allege facts that could support the conclusion that they have not been permitted to relocate to other public property, or that they have been effectively excluded from the City or otherwise subject to enforcement solely for "being" or "sleeping outdoors," unrelated to other unlawful conduct.  Their own pleadings disclose that they have, in fact, lived on public land for lengthy periods of time, and have not regularly or repeatedly pursued or been denied available alternatives to outdoor living.  Their claims are effectively that they periodically have to relocate to accommodate City cleanups of accumulated sprawl of refuse and squalor at specific sites and that they do not like or choose to pursue the alternative indoor shelter offered in the City. As noted by the district courts cited above, alleging temporary, periodic health and safety related dislocations from one's preferred public location within the City, with no claim that alternatives have been regularly or repeatedly pursued or denied, simply does not state a constitutional claim under *Martin*.

Additionally, mere allegations about aggregate capacity—that there are not enough total beds for the total unsheltered population (both of which vary on a

16

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

daily basis)—do not establish the requisite involuntariness of the plaintiff's conduct. The Eighth Amendment right is personal to an individual, not a collective right held by a community. The language in footnote 8 of *Martin* stating that its holding "does not cover individuals who *do* have access to adequate temporary shelter" would make no sense if a municipality was completely disarmed from enforcing its laws as soon as the unsheltered population exceeded empty shelter beds, regardless of an individual's willingness to access otherwise available resources. That is an indiscernible and impossibly moving target that would outright prohibit reasonable enforcement of health, safety, and welfare laws.

The Complaint here fails under *Martin*. Plaintiffs merely claim that they attempted to obtain shelter at 40 Prado or its predecessor on different past occasions, but that they are not comfortable in a congregate setting. The problem is that Plaintiffs have established no connection to an unavailability of available shelter and the time, locations and conduct for which they claim to have been cited.

For example, Ms. Langley allegedly chose not to return to the shelter because of abstract concerns about her health. Complaint ¶ 91. Ms. Askew alleges that she was denied shelter in November 2019 for too short a duration of residency in San Luis Obispo, but her citations for sleeping outside allegedly occurred in 2020 and 2021. *Id*. ¶¶ 107, 111, 113, 115. Mr. Stinnet has never even attempted to obtain shelter at 40 Prado, alleging that he stayed at the "now-closed Maxine Lewis Memorial Shelter a few times six or seven years ago but had a difficult time there." *Id*. ¶ 122. Similarly, there are no allegations that Mr. Marquez or Ms. Malmen ever attempted to obtain shelter or safe parking at 40 Prado, the City's or County's safe parking sites or any other City or County shelter or resource and was denied access to those resources or other privately obtainable resources. *See id*. ¶¶ 131-44.

17

**C.**     **The Court Should Dismiss the Second Cause of Action Because Plaintiffs Have Not Been Assessed "Grossly Disproportionate" Fines Within the Meaning of the Excessive Fines Clause.**

Plaintiffs' second cause of action alleges that the City violated the Eighth Amendment's Excessive Fines Clause. As the Supreme Court has held, "[a] fine is unconstitutional when it is grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian,* 524 U.S. 321, 327-328 (1998). Courts consider four factors in determining whether a fine is unconstitutionally excessive: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020).

The only Plaintiffs that have allegedly been fined *at all* are Mr. Stinnet and Ms. Malmen, in the amount of $861 and $130 respectively. Complaint ¶¶ 182, 183. These fines are clearly permissible under the factors identified above. *First*, Mr. Stinnet and Ms. Malmen's conduct was culpable because they knowingly violated the ordinances. *See Pimentel*, 974 F.3d at 922 ("Courts typically look to the violator's culpability to assess this factor.").  In fact, Mr. Stinnet concedes that he violated the ordinances "multiple times over the years," Complaint ¶ 123, and that the fine at issue here was imposed only after the City brought (but ultimately dismissed) similar charges on at least two prior occasions, *id.* ¶¶ 125-126. *Second*, it is at best ambiguous whether Mr. Stinnet's and Ms. Malmen's underlying violations were related to other illegal activities. *See Pimentel*, 974 F.3d at 923 (holding that "[t]his factor is not as helpful" in the case of parking fines "as it might be in criminal contexts"). *Third*, Plaintiffs do not allege any other fines or penalties that might be assessed against them for the conduct proscribed by the ordinances. *Fourth*, a portion of the penalties complained of are court fees, not City penalties. And *finally*, there is a reasonable relationship between the

18

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

relatively small fines assessed and the public interest that is served by the ordinances, including the protection of public spaces that are clean, safe, and available to the public, and the abatement of the serious risks to the health and safety of housed and unhoused citizens alike posed by encampments.

Notably, courts have upheld similar fines in similar circumstances. *See, e.g.*, *Towers v. City of Chicago*, 173 F.3d 619, 626 (7th Cir. 1999) (rejecting argument that a $500 fine for unwittingly allowing a car to be used for a criminal purpose was excessive because, although "[f]ive hundred dollars is not a trifling sum," the "City, in fixing the amount, was entitled to take into consideration that the ordinances must perform a deterrent function"). And while Plaintiffs insist that Mr. Stinnet and Ms. Malmen "cannot afford the fines the City imposes on them," Complaint ¶ 181, the Ninth Circuit has unequivocally "decline[d] [the] invitation to affirmatively incorporate a means-testing requirement for claims arising under the Eighth Amendment's Excessive Fines Clause." *Pimentel*, 974 F.3d at 925.  As a result, Plaintiffs' second count should be dismissed.

### D.   The Court Should Dismiss the Third Cause of Action Because Plaintiffs' Property Has Not Been Unreasonably Seized.

Plaintiffs' third cause of action alleges that the City seized and destroyed personal property in violation of the Fourth Amendment. That Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' . . . A 'seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

The government can seize and even destroy property when such actions are *reasonable* within the meaning of the Fourth Amendment. The Ninth Circuit has held that summarily "collecting and destroying" a homeless individual's "property on the spot" may be an unreasonable seizure under some circumstances. *Lavan v. City of L.A.*, 693 F.3d 1022, 1030 (9th Cir. 2012). But this depends on whether the

19

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

property was seized without warning and destroyed immediately without an opportunity for the homeless individual to retrieve the property. *Young*, 2020 WL 616363, at *5.

Although the Complaint asserts a Fourth Amendment cause of action for all Plaintiffs, the only allegations about seized personal property relate to Ms. Langley, Ms. Askew, and Mr. Marquez. Complaint ¶ 192. The Complaint is vague regarding the circumstances of the seizures, but specifically alleges that City protocols provide for notice in advance of an encampment cleanup. Complaint ¶¶ 72–73. Ms. Langley, for example, admits to receiving advance notice of the enforcement of City ordinances and an order to remove her personal property from Bob Jones Trail on October 8, 2020. *Id*. ¶ 99. Despite having 11 days to comply with the notice, she did not remove her property, and on October 19, 2020, her property was seized. *Id.* ¶ 100. Ms. Askew does not allege that the City failed to provide notice in compliance with its protocols. *See* Complaint ¶¶ 107-08, 110-11. While Mr. Marquez allegedly does not recall receiving notice to vacate by a given date, that allegation does not plausibly establish that the City did not provide notice. *Id.* ¶ 136. Similarly, it is not plausible that the City, in complying with its protocols to leave an inventory of removed items, would have listed Mr. Marquez's belongings but omitted a laptop computer—presumably the item of the greatest value. *Id*. ¶ 137.

The allegations are insufficient as to all three Plaintiffs "because it is unclear what property was removed at each alleged seizure, whether notice had been provided prior to the removal, and whether the property was immediately destroyed or taken to a storage facility." *Young*, 2020 WL 616363, at *5. The City's policy is to provide adequate notice in advance of any seizures. And even assuming an individual officer did not follow the City's policies on a particular occasion, the Complaint does not plead a decision by a policymaker that can support municipal liability under *Monell v. New York City Dep't of Social Servs.*,

20

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

436 U.S. 658 (1978). In sum, the Complaint's sparse allegations do not establish a plausible claim of an unreasonable seizure. *See Young*, 2020 WL 616363, at *5.

### E. The Court Should Dismiss the Fourth Cause of Action Because the City Did Not Affirmatively Expose Plaintiffs to Greater Danger.

Plaintiffs' fourth cause of action alleges that the City violated the Due Process Clause by affirmatively placing Plaintiffs in a position of danger. As an initial matter, the Due Process Clause generally does not provide an affirmative right to government aid. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 195-96 (1989). A state's failure to protect may give rise to a § 1983 claim under the state-created danger exception only "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2011) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

Plaintiffs can state a valid claim only if the City's actions created or exposed "an individual to a danger which he or she would not have otherwise faced." *Kennedy v. Ridgefield City*, 439 F.3d 1055, 1061 (9th Cir. 2006). Conducting an encampment cleanup following adequate notice does not place unhoused persons in greater danger than they would otherwise be. On the contrary, the City engages in such cleanups only when encampments become clear hazards to public health or to their occupants, such as when the location is prone to flood or fire or has reached a level of unhealthful squalor or environmental risk. A cleanup that abates a hazardous condition cannot plausibly create a danger actionable under the Due Process Clause.

////
////
////

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

---

21

**F.      The Court Should Dismiss Plaintiffs' Fifth, Sixth, and Seventh Causes of Action Because Plaintiffs Have Not Pleaded the Denial of Meaningful Access to City Programs.**

Plaintiffs' fifth, sixth, and seventh causes of action allege that the City engaged in disability discrimination when enforcing the challenged ordinances. These claims arise under Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and California Government Code section 11135, respectively.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA does not recognize a standalone claim of disparate-impact discrimination. "To assert a disparate impact claim," as Plaintiffs have attempted to do here, "a plaintiff must allege that a facially neutral government policy of practice has the 'effect of *denying meaningful access to public services*' to people with disabilities." *Payan v. L.A. Cmty. College. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (emphasis added).

Plaintiffs do not allege plausible facts demonstrating that they were denied meaningful access to a City-operated public program, facility, or service due to a qualifying disability. In fact, the plaintiffs have not even pled which City facility program or service they are alleged to have been denied. The City has a right to define its own programs. For example, the City can decide that public parks will be open only during daylight hours. Plaintiffs can effectively access public spaces in the same manner as individuals without disabilities during open hours. And the City enforces its neutral ordinances against all persons that are in violation of those ordinances, regardless of their status as either homeless or disabled. *Id.* ¶¶ 57-60.

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

22

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

While Plaintiffs also allege that 40 Prado is a City service, they do not plausibly plead that they requested (but were denied) a reasonable accommodation that would allow them to stay at 40 Prado. *See* 28 C.F.R. § 35.130(b)(7); *Payan*, 11 F.4th at 738. CAPSLO reported in 2015 that 57% of the individuals served at 40 Prado were persons with mental or physical disabilities. Complaint ¶ 33. The shelter could presumably accommodate Plaintiffs' disabilities the same way as the other residents of 40 Prado. But Plaintiffs do not ask for reasonable accommodations at 40 Prado. They request the "accommodation" of not being cited, arrested, or displaced from public property without the City providing access to shelter that meets their individualized—yet previously undisclosed—disability-related needs. *Id.* ¶¶ 103, 119, 130, 138. However, the Complaint alleges that this interactive process is ongoing and that the City has not denied Plaintiffs' requests. *Id.*

The Rehabilitation Act claims fails for the same reasons as the ADA claim. The Rehabilitation Act, which was the model for the ADA, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Plaintiffs likewise have not pleaded the denial of the benefits of the program *solely by reason of [their] disability*." *Id.*; *Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th Cir. 1988).

Finally, Plaintiffs allege that California Government Code section 11135 prohibits all forms of discrimination prohibited by Title II of the ADA and the Rehabilitation Act. Complaint ¶ 242. Without a predicate claim under federal law, this state-law claim must be dismissed as well.

////
////

23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CITY OF SAN LUIS OBISPO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP
Attorneys at Law

**G.    The Court Should Dismiss the Eighth Cause of Action Because Plaintiffs Have Failed to Allege a Predicate Claim for Their Declaratory Relief Claim.**

Finally, Plaintiffs seek declaratory relief predicated on the violations alleged in the previous causes of action. Complaint ¶ 249 ("Defendant has engaged and continues to engage in the unlawful and unconstitutional conduct as alleged and intends to continue this unlawful conduct as an ongoing practice and policy of the City of San Luis Obispo."). But because Plaintiffs' "declaratory relief claim is derivative of" its underlying substantive claims, the "declaratory relief claim must also fail." *Avirez, Ltd. v. Resolution Trust Corp.*, 876 F. Supp. 1135, 1143 (C.D. Cal. 1995); see also *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1073 (C.D. Cal. 2017) ("'[A]bsent a viable underlying claim,' Plaintiff is not entitled to the declaratory relief he requests.").

## V.    CONCLUSION

The Court should grant the City's Motion to Dismiss.


Dated:  December 8, 2021                    ADAMSKI MOROSKI MADDEN
                                            CUMBERLAND & GREEN, LLP

                                            */s/ Michelle L. Gearhart*
                                            Joshua M. George
                                            Michelle L. Gearhart
                                            Attorneys for Defendant, City of San Luis
                                            Obispo