UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA LANGLEY, RENEE ASKEW, AARON STINNET, EDWARD MARQUEZ, CHRISTINA MALMEN, and HOPE'S VILLAGE OF SLO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN LUIS OBISPO, and DOES 1–10,<br><br>Defendant. | Case No.: CV 21-07479-CJC (ADSx)<br><br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT [Dkt. 27] |

## I.     INTRODUCTION

In this case, Plaintiffs Pamela Langley, Renee Askew, Aaron Stinnet, Edward Marquez, Christina Malmen, and Hope's Village of SLO ("Hope's Village") allege that Defendant City of San Luis Obispo violated their constitutional and statutory rights by enforcing ordinances that essentially criminalize homelessness, and effectuating a widespread practice of seizing and destroying homeless people's belongings.  (Dkt. 1

[Complaint, hereinafter "Compl."].)  Now before the Court is Defendant's motion to dismiss Plaintiffs' Complaint.  (Dkt. 27 [hereinafter "Mot."].)  For the following reasons, the motion is **DENIED**.[1]

## II.   BACKGROUND

The Complaint alleges the following facts.  A decades-old shortage of affordable housing and shelter in the City of San Luis Obispo (the "City") has left many residents like the individual Plaintiffs unhoused, forcing them to use tents, RVs, cars, public parks, creeks, sidewalks, open spaces, streets, and parking facilities as shelter.  (Compl. ¶¶ 1, 6, 19, 26, 49.)  Although a 2019 survey identified 482 homeless people living in the City, with 326 unsheltered, the City's only homeless shelter houses 124 people at full capacity.  (*Id.* ¶¶ 4, 27, 32, 37.)  The coronavirus pandemic has only exacerbated the affordable housing and shelter shortage.  (*Id.* ¶¶ 4, 39–42.)  Despite this shortage, the City has continued to strictly enforce ordinances to prevent unhoused residents from sheltering in the City's open spaces and streets, effectively criminalizing homelessness.  (*Id.* ¶¶ 1, 3–5, 10, 12, 55.)  These ordinances prohibit, among other things, camping or sleeping overnight in vehicles, being present in open spaces overnight, being present in parks after hours, and traveling outside designated trails or paths.  (*Id.* ¶ 55.)  Between May 2018 and June 2021, the City issued over 300 criminal and administrative citations punishing people for violating these ordinances, with a "substantial majority" of the citations being issued to unhoused people.  (*Id.* ¶¶ 57, 60.)

The City has made numerous efforts to displace unhoused individuals from open space, public parks, and other City areas.  (*Id.* ¶¶ 50–70.)  For example, for many years,

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for February 14, 2022 at 1:30 p.m. is hereby vacated and off calendar.

dozens of homeless individuals such as Plaintiffs Langley, Askew, and Stinnet have made their home in open space areas on the San Luis Obispo Creek and the Bob Jones Trail. (*Id.* ¶ 53.)  But in May 2020 and October 2020, the City conducted sweeps of the Bob Jones Trail under threat of arrest, displacing the people staying there, despite the fact that the City lacked adequate shelter to accommodate its unhoused population. (*Id.* ¶ 63.)

As part of its sweeps, the City has also seized and destroyed the personal possessions that homeless people need for protection, privacy, and survival. (*Id.* ¶¶ 6, 11, 71.)  In particular, the City has thrown away or destroyed homeless people's personal property, in violation of its own written procedures stating it will store property for 60-90 days before destroying it. (*Id.* ¶¶ 71–78.)

In spring 2020, the Center for Disease Control ("CDC") issued guidance urging local governments to provide handwashing and other sanitation facilities at homeless encampments, and not to clear encampments unless individual housing options are available, in order to decrease the potential for infectious disease spread. (*Id.* ¶ 81.) Nevertheless, the City has continued to clear homeless encampments during the pandemic, with the City's Police Captain explaining that the CDC's statements are only "recommendations," not "laws." (*Id.* ¶¶ 82–83, 85.)

Based on the City's conduct, Plaintiffs assert claims under 42 U.S.C. § 1983 for (1) violation of the Eighth Amendment's prohibitions against cruel and unusual punishment and (2) excessive fines, (3) violation of the Fourth Amendment's prohibition on unreasonable searches and seizures, and (4) violation of the Fourteenth Amendment by implementing a state-created danger, (5) a claim under the Americans with Disabilities Act ("ADA") alleging that the City's actions discriminate against people with disabilities, (6) a claim under the Rehabilitation Act for disability discrimination in federally assisted programs, (7) a claim under California Government Code § 11135 for

disability discrimination by a state-funded entity, and (8) a claim for declaratory relief. (*Id.* ¶¶ 166–249.)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

Defendant argues that Plaintiff Hope's Village lacks standing to assert claims against it, and that each of Plaintiffs' claims should be dismissed for failure to state a claim. The Court addresses each argument in turn.

//

### A. Hope's Village's Standing

Hope's Village is "a local nonprofit dedicated to establishing a sustainable community for unhoused people" and "helping unhoused people secure the most basic necessities." (Compl. ¶ 9; *see id.* ¶¶ 20, 145.) Among other programs, it provides mobile showers, temporary shelters at local motels, RVs and vans to house unhoused persons, outreach, and basic supplies. (*Id.* ¶¶ 20, 150–57.)

Defendant argues that Hope's Village lacks standing to pursue claims in this case. (Mot. at 8–11.) Article III of the United States Constitution requires that courts adjudicate only actual cases or controversies. To constitute an actual case or controversy, the plaintiffs bringing a case must have standing. To satisfy the standing requirement, a plaintiff must show that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the defendant's challenged actions, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000).

Hope's Village contends that it is an organizational Plaintiff with direct standing to sue. (*See* Compl. ¶ 145.) "[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021). Even "broadly alleged" diversion-of-resources allegations are sufficient to establish organizational standing at the pleading stage because on a motion to dismiss courts presume that general allegations embrace those specific facts necessary to support the claim. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015).

Hope's Village has sufficiently alleged organizational standing under this standard. Specifically, it alleges that the City's criminalization of homeless people and efforts to remove them and their property from public space in the absence of adequate available shelter "frustrate[ ] [its] mission to build a sustainable community for unhoused persons." (Compl. ¶ 161). It further alleges that it "has been forced to divert resources that it would otherwise use to further its mission in order to help homeless residents recover life-sustaining items they lost during [the City's] sweeps." (*Id.* ¶ 162; *see id.* ¶ 9.) These allegations are sufficient to establish organizational standing. *See, e.g.*, *Nat'l Council of La Raza*, 800 F.3d at 1040 (finding organizational standing sufficiently alleged when the state's conduct forced the organizational plaintiff to divert resources toward registering people to vote who the state would likely have registered if it had acted lawfully that the plaintiff would otherwise have spent on some other aspect of their organizational purpose); *Garcia v. City of Los Angeles*, 2020 WL 2128667, at **3–6 (C.D. Cal. Feb. 15, 2020) (concluding that organization "founded to form connections between housed and unhoused residents of Koreatown, and to advocate for housing and shelters in their community" sufficiently alleged organizational standing when it alleged that the defendant city's ordinance enforcement against homeless people frustrated its mission and forced it to divert resources, including to spend time helping unhoused people respond to city's sweeps).

### B.   First Claim: Violation of the Eighth Amendment's Prohibition Against Cruel and Unusual Punishment

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const., amend. VIII. This clause "preclude[s] the enforcement of a statute prohibiting sleeping outside against homeless individuals with no access to alternative shelter." *Martin v. City of Boise*, 920 F.3d 584, 615 (9th Cir. 2019); *see id.* at 616 ("[T]he Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on

public property for homeless individuals who cannot obtain shelter."). That is because, as to that class of people, statutes punishing resting outside punish "involuntary" conduct and therefore criminalize merely the "status" of being homeless. *Id.* at 616. A city is not required to provide sufficient shelter for all homeless people in it, but "so long as there is a greater number of homeless individuals in [a city] than the number of available beds [in shelters]," the city may not prosecute homeless people for "involuntarily sitting, lying, and sleeping" outdoors on public property. *Id.* at 617.

Plaintiffs have sufficiently alleged an Eighth Amendment violation. Specifically, they have alleged that there is a far greater number of homeless people living in the City than the number of beds available. (Compl. ¶¶ 36–47.) And they have alleged that, taking together the City's ordinances prohibiting overnight camping on public land, parks, open space, riparian areas, land adjacent to riparian areas, and parking areas, the City effectively makes it a crime for homeless people to do what any human being is "biologically compelled" to do—rest. *See Martin*, 920 F.3d at 617; (*see* Compl. ¶¶ 55, 168–175 [alleging that the City's enforcement of its anti-camping and other ordinances "effectively punish[es] Plaintiffs and other homeless individuals by virtue of their homelessness," even though those people have "no choice but to sleep outdoors" due to the City's limited number of shelter beds].) These allegations are sufficient to state a claim. *See Blake v. City of Grants Pass*, 2020 WL 4209227, at *8 (D. Or. July 22, 2020) (granting summary judgment in favor of homeless plaintiffs and concluding that "[b]ecause Grants Pass lacks adequate shelter for its homeless population, its practice of punishing," through a combination of local ordinances, "people who have no access to shelter for the act of sleeping or resting outside while having a blanket or other bedding to stay warm and dry constitutes cruel and unusual punishment in violation of the Eighth Amendment").

Defendant argues that the City's "ordinances are constitutional because they do not individually or collectively ban sitting, lying, or sleeping on all public property at all times." (Mot. at 14; *see* Dkt. 33 [Reply] at 6–7.) But Defendant does not explain where a homeless person may lawfully sit, lie, or sleep at night without violating the ordinances. (*See* Mot. at 14–15; Reply at 6–7.) The Court's best interpretation of Defendant's argument is that the ordinances are constitutional because they do not prohibit sitting, lying, or sleeping on public property *during the daytime*. In other words, Defendant argues it does not criminalize homelessness so long as the homeless are nocturnal. The Court is unpersuaded. Defendant may not, consistent with the Eighth Amendment, criminalize resting outside on public property when there is insufficient sleeping space practically available in any shelter. *Martin*, 920 F.3d at 618. Plaintiffs plausibly allege that Defendant has done so.

### C. Second Claim: Violation of the Eighth Amendment's Prohibition Against Excessive Fines

In addition to cruel and unusual punishments, the Eighth Amendment prohibits "excessive fines." U.S. Const., amend. VIII. Fines are excessive if they are "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Plaintiffs allege that the City's enforcement of ordinances while insufficient shelter is available violates the Eighth Amendment because it imposes excessive fines on homeless people. (Compl. ¶¶ 178–180.) For example, Plaintiffs allege that the City "imposed a $861 fine against Plaintiff Aaron Stinnet for an alleged violation City of San Luis Obispo, Municipal Code § 12.20.040(E) (being present in a park after hours) and then referred that fine to collections." (*Id.* at ¶ 182.) Plaintiffs allege that the fines Defendant imposes "are grossly disproportionate to the underlying offense" because the underlying offense involved merely "engaging in the involuntary, life-sustaining activity of sleeping in public spaces." (*Id.* ¶¶ 186–187.)

Defendant argues that Plaintiffs' claim under the excessive fines clause should be dismissed because the fines are not grossly disproportionate to the conduct alleged. (Mot. at 18–19; Reply at 8–9.) As to Mr. Stinnet's fine, for example, the City argues that the fine was "clearly permissible" because, among other reasons, Mr. Stinnet's conduct was "culpable" because he "knowingly violated the ordinances," it is "ambiguous" whether his "underlying violations were related to other illegal activities," a portion of the penalty was "court fees, not City penalties," and because "there is a reasonable relationship between the relatively small fines assessed and the public interest that is served by the ordinances, including the protection of public spaces that are clean, safe, and available to the public, and the abatement of the serious risks to the health and safety of housed and unhoused citizens alike posed by encampments." (Mot. at 18–19; Reply at 8–9.) But Defendant's arguments raise numerous factual issues inappropriate for resolution on a motion to dismiss. At this stage, Plaintiffs have sufficiently alleged a violation of the excessive fines clause. *See, e.g.*, *Blake*, 2020 WL 4209227, at *11 ("For Plaintiffs, the conduct for which they face punishment is inseparable from their status as homeless individuals, and therefore, beyond what the City may constitutionally punish. The fines associated with violating the ordinances at issue, as applied to Plaintiffs, are unconstitutionally excessive.").

### D. Third Claim: Violation of the Fourth Amendment's Prohibition Against Unreasonable Search and Seizure

The Fourth Amendment provides that "[t]he right of the people . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Plaintiffs allege that the City violated the Fourth Amendment by unlawfully seizing and destroying homeless people's possessions. (Compl. ¶ 192.) For example, Plaintiffs allege that in October 2020, after police officers forced Plaintiff Langley out of her campsight at the Bob Jones Trail, the City destroyed her belongings, which "included

clothing, food, coolers, and, most significantly, the bicycle the Ms. Langley used as her primary mode of transportation." (*Id.* ¶ 100.)

Defendant contends that Plaintiffs' unlawful seizure claim should be dismissed because Plaintiffs fail to allege that the seizures were unreasonable, pointing to the City's policy to provide adequate notice in advance of any seizures. (Mot. at 19–20; Reply at 10.) But even if Defendant is correct that local law was followed before seizing Plaintiffs' property, seizing property pursuant to the authority of a city ordinance "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). And other considerations regarding the reasonableness of Defendant's conduct are not fit for evaluation on a motion to dismiss. Moreover, Plaintiffs allege that Defendant does not follow its procedures regarding property seizures, and that it is instead "customary for the City to take and destroy items left at encampments." (Compl. ¶¶ 71, 75–77.) Plaintiffs have sufficiently alleged a Fourth Amendment claim.

### E.   Fourth Claim: Creation of a State-Created Danger in Violation of the Fourteenth Amendment

The Fourteenth Amendment, which prohibits "any state [from] depriv[ing] any person of life, liberty, or property, without due process of law," U.S. Const. amend XIV, "generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). There is an exception to this rule, however, "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Id.* at 971-72 (citations omitted). Under this exception, government employees may be held liable when they "affirmatively place the plaintiff in a position of danger, that is, where their actions create or expose an individual to a danger

which he or she would not have otherwise faced," and act with deliberate indifference to their personal and physical safety. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

Defendant argues that Plaintiffs' state-created danger claim should be dismissed because "the City engages in [encampment] cleanups only when encampments become clear hazards to public health or to their occupants, such as when the location is prone to flood or fire or has reached a level of unhealthful squalor or environmental risk." (Mot. at 21.) The Complaint, of course, alleges otherwise. Plaintiffs allege that because they lack other options for shelter, the City's sweeps and property seizures force homeless people "to live exposed to the elements, without protection from cold, wind, and rain, jeopardizing their physical and mental health." (Compl. ¶ 201.) Accepting Plaintiffs' allegations as true and construing them in the light most favorable to Plaintiffs, they have plausibly alleged a state-created danger claim. *See, e.g.*, *Where Do We Go Berkeley v. California Dep't of Transportation (Caltrans)*, 2021 WL 5964594, at *13 (N.D. Cal. Dec. 16, 2021) (denying motion to dismiss state-created danger claim because "if Defendants are moving forward with the closure of the encampments with knowledge that available housing options may not be viable and without sufficient attempt to address alternatives (*e.g.*, alternative encampment sites on state property, alternative housing options supported by local jurisdictions), a reasonable jury might well find Defendants to be deliberately indifferent").

### F. Fifth, Sixth, and Seventh Claims: Disability Discrimination

Plaintiffs' fifth, sixth, and seventh claims allege disability discrimination under the ADA (fifth claim), the Rehabilitation Act (sixth claim), and California Government Code Section 11135 (seventh claim). Defendant argues that these claims should be dismissed

because Plaintiffs have not adequately alleged the denial of meaningful access to City programs. (Mot. at 22–23.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides as follows: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Finally, California Government Code Section 11135 provides that "[n]o person in the State of California shall, on the basis of . . . mental disability [or] physical disability. . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

Plaintiffs have sufficiently alleged that the City's sweeps and property seizures discriminate against people with with mental and physical disabilities because such people are likely to suffer aggravated effects from the City's sweeps and property seizures, and because the City fails to provide reasonable accommodations based on disabilities. (Compl. ¶¶ 13, 43, 46, 103, 119, 130, 138, 173, 201); *see, e.g.*, *Where Do We Go Berkeley*, 2021 WL 5964594, at **8–11 (denying motion to dismiss ADA and Rehabilitation Act claims when the plaintiff alleged the defendant's program regarding the removal of homeless encampments failed to give reasonable accommodation to disabled persons because they have more difficulty in relocating and/or finding housing and therefore need more time before being evicted); *Bloom v. City of San Diego*, 2018 WL 9539238, at *4 (S.D. Cal. June 8, 2018) (denying motion to dismiss ADA and

Rehabilitation Act claims because "the complaint plausibly allege[d] that disabled, homeless plaintiffs [were] disproportionately burdened by the ordinances" prohibiting RV parking on public streets and parking lots from 2:00 a.m. to 6:00 a.m. and living in a vehicle).

### G. Eighth Claim: Declaratory Relief

Plaintiffs' eighth claim seeks declaratory relief regarding Defendant's "unlawful and unconstitutional conduct." (Compl. ¶ 249.) Because the Court does not dismiss Plaintiffs' underlying substantive claims, the Court will not dismiss Plaintiffs' declaratory relief claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED.** Defendant shall file an answer to Plaintiffs' Complaint by **February 22, 2021**.

DATED: February 7, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE