1  Sasha G. Aguilar (SBN 325131)
   Email: saguilar@crla.org
2  CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
   1880 Santa Barbara Ave. Suite 240
3  San Luis Obispo, CA, 93401
   Telephone: (805) 544-7994
4  Facsimile: (805) 544-3904

5  [*Additional Counsel Listed on following page*]

6  Attorneys for Plaintiffs

7
                    UNITED STATES DISTRICT COURT
8
                   CENTRAL DISTRICT OF CALIFORNIA
9

10 Pam Langley, Edward Marquez,        | Case No.: 2:21-cv-07479 CJC
   Christina Malmen,                   |
11                   Plaintiffs        | **STIPULATED REQUEST FOR
                                       | DISMISSAL WITH PREJUDICE
12            v.                       | AND FOR THE COURT TO RETAIN
                                       | JURISDICTION AND [PROPOSED
13 City of San Luis Obispo,            | ORDER]**
   DOES 1 to 10                        |
14                   Defendants        |

15

16

17

18

19

20

STIPULATED REQUEST FOR DISMISSAL WITH PREJUDICE AND FOR THE COURT TO
RETAIN JURISDICTION AND [PROPOSED ORDER]
CASE NO.: 2:21-CV-07479 CJC
-1-

1   Lauren Hansen (SBN 268417)
    lhansen@pilpca.org
2   Palmer Buchholz (SBN 307020)
    pbuchholz@pilpca.org
3   Michael Rawson (SBN 95868)
    mrawson@pilpca.org
4   PUBLIC INTEREST LAW PROJECT
    449 15th Street, Suite 301
5   Oakland, CA 94612
    Telephone: (510) 891-9794
6   Facsimile: (510) 927-2977

7   Babak Naficy (SBN 177709)
    Email: babaknaficy@sbcglobal.net
8   LAW OFFICES OF BABAK NAFICY
    1124 Nipomo St, Ste C
9   San Luis Obispo, CA 93401-3883
    Telephone: (805) 593-0926
10  Facsimile: (805) 593-0946

11  Ilene Jacobs (SBN 126812)
    Email: ijacobs@crla.org
12  CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
    511 "D" St.
13  Marysville, CA 95901
    Telephone: (530) 742-5191
14  Facsimile: (530) 742-0421

15

16

17

18

19

20

STIPULATED REQUEST FOR DISMISSAL WITH PREJUDICE AND FOR THE COURT TO
RETAIN JURISDICTION AND [PROPOSED ORDER]
CASE NO.: 2:21-CV-07479 CJC
-2-

Pursuant to Fed. R. Civ. Proc. 41(a)(2) and in accordance with the Settlement Agreement attached hereto as Exhibit 1, Plaintiffs respectfully request that the Court dismiss this matter with prejudice, and retain jurisdiction to enforce the terms of the Settlement Agreement.

Dated:  December 22, 2023            CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
                                     PUBLIC INTEREST LAW PROJECT
                                     LAW OFFICES OF BABAK NAFICY


                                      */s/ Lauren Hansen*
                                     Lauren Hansen
                                     Attorneys for Plaintiffs, Pamela Langley, Edward Marquez, and Christina Malmen

Dated:  December 22, 2023            ADAMSKI MOROSKI MADDEN
                                     CUMBERLAND & GREEN, LLP


                                      */s/ Michelle L. Gearhart*
                                     Michelle L. Gearhart
                                     Joshua M. George
                                     Attorneys for Defendant, City of San Luis Obispo

//

//

//

//

//

**ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(ii)**

I hereby attest that all other signatories listed, and on whose behalf the filing is submitted,

concur in the filing's content and have authorized the filing.


 */s/ Lauren Hansen*

Lauren Hansen

# **EXHIBIT 1**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereinafter "Agreement" or "Mutual Release") is made by and among Plaintiffs Pamela Langley, Edward Marquez, Christina Malmen as individuals and the Defendant City of San Luis Obispo ("Defendants") (collectively, the "Parties").

## RECITALS

On September 17, 2021, Plaintiffs filed a Complaint for Injunctive and Declaratory Relief in United States District Court, Central District of California (Case No. 2:21-cv-07479-CJC-ADS) ("The Action"). The original Complaint included three additional Plaintiffs, Renee Askew, Aaron Stinnett, and Hope's Village of SLO.

On December 8, 2021, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. On February 7, 2022, the Court denied Defendants' Motion.

On September 15, 2022, Plaintiffs filed a Stipulation for Voluntary Dismissal of Renee Askew and Aaron Stinnett.

On April 18, 2023, Plaintiffs filed a Stipulation for Voluntary Dismissal of Hope's Village of SLO.

On December 6, 2023 the City Council for the City of San Luis Obispo approved the settlement.

The Parties wish to resolve this litigation and in exchange for the promises as outlined hereinbelow, Plaintiffs will execute and file a Stipulation for Voluntary Dismissal with prejudice, at which time the Parties shall take the actions stated below.

NOW, THEREFORE, in consideration of the above promises and the following covenants, it is agreed as follows:

## DEFINITIONS

As used herein the following terms shall have the following meanings:

**"Shelter or Housing"** may be permanent supportive housing, transitional housing or shelter, interim housing, a residential treatment facility, or an emergency placement (including, but not limited to shelter beds, pallet shelters, emergency or transitional shelter housing, safe parking placements, and hotel vouchers) offered to Unsheltered Persons that are adequate to meet their individualized needs. The adequacy of a shelter will be determined in consultation with the unhoused person through a voluntary referral for assessment by qualified personnel, who are trained in individual assessment of an Unsheltered Person's shelter needs and employed or engaged to perform such assessment by a shelter, housing, and/or social services provider. Shelter offered to an individual shall not be deemed inadequate to meet individualized needs solely due to an individual's preference for a type or location of shelter other than that deemed appropriate and offered to them following an individualized assessment, but not otherwise subject to accommodation under operable law at the time of the individualized assessment.

DocuSign Envelope ID: 64224B32-1C8E-451A-A47C-21C3153E49DE

**"Assessment Referral"** means an offer of referral and transportation of a person, by Outreach Staff to qualified assessment personnel, who are trained in individual assessment of an Unsheltered Person's shelter needs, and employed or engaged by a shelter, housing or social services provider to perform such assessment. If the Assessment Referral is accepted qualified assessment personnel will work with the unhoused individual to determine what type or types of shelter or housing constitutes adequate Shelter or Housing for that individual, and who will make an offer of adequate Shelter or Housing to that individual, if such adequate Shelter or Housing can be identified and is practicably available to the individual in a accordance with any applicable eligibility and/or participation requirements. The Assessment Referral can be based on a combination of the self-report of the unhoused person and the observations of the Outreach Staff, and it may overlap with a Coordinated Entry System assessment and/or the type of mental health assessment referred to in Section 2.2 of the City's CAMP Standards as of the effective date of this agreement.

**"City"** means the City of San Luis Obispo, including all of its departments, as well as its officials, agents, employees, and representatives.

**"Homeless Services Center at 40 Prado"** is a homeless services center that currently includes congregate shelter located at 40 Prado Road, San Luis Obispo, CA 93401. The Parties' understanding of 40 Prado as of the time of signing this agreement is as follows: 40 Prado is a year-round congregate shelter, with separate private or semi-

1  private rooms for families and recuperative care patients, that allows occupants overnight

2  shelter, meals, showers, laundry, mail/phone services, access to case management,

3  primary medical care, and animal kennels, among other coordinated supportive services.

4  40 Prado operates 24 hours a day, 7 days a week and is available to men, women, and

5  families, as well as recuperative care patients, who are unhoused. 40 Prado is operated by

6  Community Action Partnership of San Luis Obispo County ("CAPSLO"), a 501(c)(3)

7  non-profit agency, which is organizationally separate from and independent of the City.

8  CAPSLO determines the conditions of entry into the shelter and services it provides and

9  the City does not have operational or management control over the policies and

10 operations of 40 Prado, but does have certain contractual agreements with 40 Prado,

11 pursuant to which the City provides funding to 40 Prado and 40 Prado provides services

12 to unhoused residents of the City. 40 Prado also provides a warming and cooling shelter

13 during specified heat, cold weather, and rain events, which increases the number of

14 shelter beds available during such weather conditions.

15     **"Outreach Staff"** means members of the City's Community Action Team (CAT)

16 and Mobile Crisis Unit (MCU), and other City personnel involved in the Assessment

17 Referral process, in collaboration with outreach staff from CAPSLO and other service

18 providers.

19     **"Public Property"** means any publicly owned property in the City, that is open

20 and subject to use by the public, either without restriction as to times or days of use or

during publicly posted hours of use, whether improved or unimproved, located within the City limits.

**"Service Provider"** includes the Homeless Services Center at 40 Prado, the Housing Authority of the City of San Luis Obispo ("HASLO"), Transitions - Mental Health Association ("TMHA"), People's Self-Help Housing, Five Cities Homeless Coalition, El Camino Homeless Organization ("ECHO"), County of San Luis Obispo - Social Services Department and/or Behavioral Health Department ("County"), or other similar housing, treatment, or mental health service providers.

**"Unsheltered Person"** means an individual who agrees to participate in an Assessment Referral for whom Shelter or Housing is not practicably available at the time the individual requests and agrees to enter shelter, and who does not own, lease or have the ability to secure Shelter or Housing, either through personal assets, personal relationships, or public assistance.

## ACKNOWLEDGMENTS

Plaintiffs and their counsel recognize and acknowledge that the City is not a social services provider and does not receive funding for providing shelter, care, mental health services, addiction treatment services, or other programs that are made available to unhoused persons by other agencies. Plaintiffs recognize and acknowledge that California Welfare and Institutions Code section 6560, *et seq*. requires the County of San Luis

1  Obispo to provide mental health services and that the funding for those services is

2  determined by the County Board of Supervisors, over which the City has no control.

3        The City Council has provided significant funding to CAPSLO for shelter services,

4  including for construction of the current Homeless Service Center at 40 Prado, has made

5  addressing housing and homelessness a City goal in its 2021-2023 and 2023-2025

6  Financial Plans and its 2020-2028 Housing Element, and has adopted a City specific,

7  Homelessness Response Strategic Plan, to align with and amplify the County's strategic

8  plan to address homelessness.

9        The Parties agree to work collaboratively with each other, the County, and other

10  Service Providers toward programmatic solutions to the challenges facing unhoused

11  persons and the City remains open to ongoing consultation with plaintiffs and their

12  representatives as to how it may better support the County, other service providers, and

13  unhoused residents of the City in meeting the needs of unhoused persons.

14  **AGREEMENT**

15      1.    The Parties shall execute this Settlement Agreement and Mutual Release

16  with the court retaining jurisdiction to enforce the Settlement Agreement subject to Fed.

17  R. Civ. Proc. 41(a)(2). Plaintiffs agree to file a Stipulation of Plaintiffs and Defendants

18  for Voluntary Dismissal with prejudice requesting the Court retain jurisdiction to enforce

19  this Settlement Agreement. The parties will meet and confer within 30 days about

20  potentially modifying the Agreement in the event that the Supreme Court of the United

States accepts review of and reverses or limits the ruling of the United States Court of

Appeals for the Ninth Circuit in the case of *Johnson et al. v. City of Grants Pass*. The

parties agree to make reasonable efforts to resolve any disputes without intervention of

the Court.  The parties agree that they will provide 10 days' notice to the other party prior

to filing any motion to enforce or modify the Agreement.

2.      Within 30 days of the execution of this Agreement, the City shall issue

payments in the amount of $7,500 to each Plaintiff. The parties agree that these payments

will be used solely for Shelter or Housing or other basic needs and shall not be used to

support the occupancy or storage or accumulation of personal property in or upon

outdoor spaces not lawfully permitted for lodging or to facilitate the illegal occupancy or

storage of any vehicle in or upon any publicly owned or operated space.

3.      Within 30 days of the execution of this agreement, the City shall waive or

dismiss any currently pending, City-directed prosecution action or penalty assessment for

violations of SLOMC § 10.34.020(A), SLOMC § 12.04.020, SLOMC § 12.20.040(E),

SLOMC § 12.22.050(B), SLOMC § 12.22.050(P), SLOMC § 12.23.030(B), and/or

SLOMC § 12.23.030(I), as against the named Plaintiffs who are currently parties to the

action, which have been cited and/or filed, and remain outstanding, as of the date of

execution of this Agreement.

4.      The City agrees to adhere to the Compassionate Assistance, Mitigation and Prevention (CAMP) Standards in effect on the date of this fully executed Agreement, which may be amended and modified from time to time in accordance with this Agreement and as necessary to comply with subsequent changes in state or federal statutory or decisional law.

5.      The City's current CAMP standards (attached hereto as Exhibit A) have been reviewed by Plaintiffs' counsel and are incorporated herein by reference as though fully set forth. The City agrees to adhere to the CAMP standards in effect on the date of this fully executed agreement, which may be amended and modified from time to time in accordance with this Agreement and subsequent changes in state or federal statutory or decisional law. The Parties agree that subsequent modifications of those standards may be necessary to bring the CAMP standards into conformity with subsequently enacted state or federal law, including subsequently decided, binding case law, and to reflect necessary non-substantive modifications to operational practices. and/or to address alignment with additional subsequently developed service and shelter alternatives.

6.      The City further agrees to notify Plaintiffs' counsel of any material proposed amendments to substantive provisions of the CAMP standards 30 days in advance of implementing those changes and, if requested by Plaintiffs' counsel, within said 30-day period, to meet and consult with them prior to implementation of such changes, provided that consultation shall not delay proposed amendments for more than 60 days from the

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153E49DE

1   date of notification, unless expressly agreed otherwise by both parties in writing and shall

2   not preclude City's compliance with otherwise applicable state or federal statutory or

3   decisional law.

4          7.     The City's current Temporary Storage Guidelines (attached hereto as Exhibit

5   B) have been reviewed by Plaintiffs' counsel and are incorporated herein by reference as

6   though fully set forth. The City agrees to adhere to the Temporary Storage Guidelines in

7   effect on the date of this fully executed agreement, which may be amended and modified

8   from time to time in accordance with this Agreement and subsequent changes in state or

9   federal statutory or decisional law. The Parties agree that subsequent modifications of

10  those standards may be necessary to bring the Storage Guidelines into conformity with

11  subsequently enacted state or federal law, including subsequently decided, binding case

12  law, and to reflect necessary non-substantive modifications to operational practices.

13         8.     The City further agrees to notify Plaintiffs' counsel of any material proposed

14  amendments to substantive provisions of the Temporary Storage Guidelines 30 days in

15  advance of implementing those changes and, if requested by Plaintiffs' counsel, within

16  said 30-day period, to meet and consult with them prior to implementation of such

17  changes, provided that consultation shall not delay proposed amendments for more than

18  60 days from the date of notification, unless expressly agreed otherwise by both parties in

19  writing, and shall not preclude City's compliance with otherwise applicable state or

20  federal statutory or decisional law.

SETTLEMENT AGREEMENT AND MUTUAL RELEASE
CASE NO.: 2:21-CV-07479 CJC
-9-

9.    The City will commit to advocating for the establishment of housing alternatives co-located with supportive services on public or available private property within the City, as well as throughout the County. The City will continue to work with the Homeless Services Center at 40 Prado and support applications through the Homekey application process and other current or future funding programs to expand available temporary and transitional shelter and housing options within the City, including supporting the development and expansion of non-congregate options.  The parties acknowledge that this Agreement is not intended to, and legally cannot, commit any future City Council to fund or vote in support of any specific project or application, other than those projects for which the Council has committed support as of the date of execution of this Agreement, as specifically set forth below.

10.    The City will support, with facilitation, partnerships, development review processing, and/or direct financial support, the production of units by housing providers in the City dedicated to housing unhoused individuals, including, but not limited to the following efforts in which the City is involved, totaling 134 to 151 units:

The Anderson Hotel – 68 Homeless Units

Maxine Lewis – 40 Homeless Units

Humbert/Victoria – 40 Senior Units, estimated 8 homeless units

Bridge Street – 94 units, 3 phases, estimated 9-20 homeless units

1422 Monterey – 106 units, estimated 9-15 homeless units

11.     When an Unsheltered Person resides in an encampment on Public Property that the City has designated as Level 2 (Advance Action Required) or Level 3 (Mitigation Required) under the CAMP standards, the City will make an Assessment Referral for the Unsheltered Person.

12.     If the Unsheltered Person accepts Assessment Referral, the City or qualified assessment staff engaged by a service provider, as appropriate, will offer to provide or coordinate transportation to the location of the assessment and initial transportation to the location of Shelter or Housing, should any be practically available, if the person wants transportation.

13.     If an Unsheltered Person indicates to Outreach Staff that they will accept placement in Shelter or Housing, but it is determined through the Assessment Referral that there is no placement immediately and practically available, the City, will contract to provide financial support to a service provider  who will, based on the individualized assessment performed by qualified assessment personnel, either utilize available hotel vouchers funded by the City to create available capacity for the individual in otherwise existing adequate Shelter or Housing or provide the individual with a voucher to stay at a local motel for up to 30 days.  Eligibility for City funded vouchers will be limited to unhoused individuals living in the City and receipt of a voucher will be conditioned upon the person agreeing to accept an Assessment Referral, complying with the rules of the establishment in which placement is provided and agreeing to engage with Assessment

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153E49DE

1    Referral staff and/or other appropriate housing or services staff to access appropriate

2    shelter, housing and/or supportive services

3        14.    The City shall establish a fee waiver program wherein an Unsheltered

4    Person may petition the City for a waiver of any fees or fines imposed for violations of

5    SLOMC § 10.34.020(A), SLOMC § 12.04.020, SLOMC § 12.20.40(E), SLOMC §

6    12.22.050(B), SLOMC § 12.22.050(P), SLOMC § 12.23.030(B), SLOMC § 12.23.030(I).

7    The City shall identify the grounds for waiver.

8        15.    The City will include language in all of its new contracts, as of January 1,

9    2024 with entities that provide homeless services, including 40 Prado, requiring those

10   entities to adopt reasonable accommodation policies and procedures that are consistent

11   with the Americans with Disabilities Act, 42 U.S.C. Section 12131 *et seq.*, Section 504 of

12   the Rehabilitation Act of 1973, 29 U.S.C. Section 794, and California Government Code

13   Section 11135, and all other applicable anti-discrimination statutes (e.g., FEHA) as a

14   condition of receiving funding.

15       16.    City departments with staff engaged in delivery of direct field services to

16   Unsheltered Persons shall receive enhanced training above and beyond the minimum

17   required by applicable licensing or managing bodies to include initial employment

18   training (as soon as available, within the first year of employment) and supplemental

19   training on a bi-annual basis thereafter on health and safety, de-escalation, and crisis

20   intervention for persons experiencing mental health issues.

17.     The City will pay $210,000.00 to Plaintiffs' counsel. The intended use of the

attorneys' fees will be to advocate for the public interest, including homelessness

prevention, affordable housing, and outreach to the unhoused community about the

services and Shelter and Housing options that are available in the community. Counsel

for the Plaintiffs also represent that that they have no present intent to bring any similar

claims in San Luis Obispo to those made in the Action.

18.     All Parties hereby waive any and all claims (which include all unknown and

unanticipated rights, liens, claims for indemnity or contribution, causes of action and

damages resulting from these events) that they may have against each other party and

each of their attorneys, insurers, employers, employees, elected officials, representatives,

agents, or assignees arising out of or relating to the above-mentioned Action. Except as

expressly provided in this Agreement, Plaintiffs are expressly responsible for all liens, or

other expenses incurred by Plaintiffs as a result of the incidents alleged in the Action and

shall hold harmless, defend and indemnify the settling Parties and their insurers of and

from any such lien claims.

19.     In executing this Mutual Release, all Parties hereby waive all rights and

benefits which they may now have or in the future may have related to claims or actions

occurring or alleged to have occurred prior to the execution of this Agreement under and

by virtue of the terms of Section 1542 of the Civil Code of the State of California, which

section reads as follows:

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153549DE

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in their favor at the time of executing the release and that, if known by them, would have materially affected their settlement with the debtor or released party.

20.    All Parties agree that this is a compromise settlement of disputed claims, and this Mutual Release shall not be deemed or construed as an admission of liability on the part of any party to this Mutual Release. Defendant expressly denies the allegations stated against it and enters into this settlement in order to reach a final resolution of all pending litigation.

21.    All Parties agree to cooperate fully and to execute any and all supplementary documents, and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Mutual Release, and which are not inconsistent with its terms.

22.    This Mutual Release contains the entire understanding of all Parties with respect to the subject matter hereof, and no modification or waiver of any of the provisions hereof shall be valid unless it is put into writing and executed by all parties hereto.

23.    Should any provision of this Mutual Release be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms and provisions shall not be affected thereby and said illegal or invalid part, term or provision shall not be

1  deemed to be part of this Mutual Release.  This Mutual Release shall be interpreted

2  according to its plain meaning and not for or against either party as a result of the

3  presumption under California Civil Code section 1654. This Agreement shall be

4  governed as to validity, interpretation, construction, effect, and in all other respects by the

5  laws of the State of California.

6        24.    Each of the Parties to this Mutual Release represents and warrants that they

7  have full legal authority to agree to and execute this Mutual Release containing the

8  provisions herein (including those concerning the release of claims) on behalf of any and

9  all persons having a legal and/or beneficial interest whatsoever in the rights, claims,

10  demands, causes of action, injuries, damages, loss, actions, costs, attorneys' fees, loss of

11  services, expenses and compensation released thereby.

12        25.    Each party represents and warrants that in executing this Mutual Release,

13  they have relied on the legal advice of their attorney of choice, and the terms of this

14  Mutual Release and its consequences have been completely read and explained to each

15  party by that attorney, and each party fully understands the terms of this Mutual Release.

16        26.    The undersigned further expressly agree that this Mutual Release shall be

17  binding upon all successors and assigns and shall inure to the benefit of all Parties and

18  each of them.  The undersigned further represents that any approvals of this settlement

19  required to be obtained by the undersigned have been obtained and that they are expressly

20  or otherwise fully authorized to release and discharge the Parties, as described herein.

27.     This Agreement may be executed in counterparts and delivered by facsimile or via electronic means such as PDF, and each such counterpart and/or facsimile/electronic signature shall be deemed to be an original, and all of which when taken together shall constitute one executed agreement.

28.     THE PARTIES HAVE READ AND UNDERSTOOD THE TERMS AND NATURE OF THE FOREGOING MUTUAL RELEASE AND WARRANT THAT THE MUTUAL RELEASE CONTAINS THE "ENTIRE AGREEMENT" BETWEEN THE PARTIES HERETO, AND NO PROMISE, INDUCEMENT OR AGREEMENT NOT EXPRESSLY CONTAINED HEREIN HAS BEEN MADE.

//

//

//

//

//

//

//

//

//

//

//

1      **IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement

2   pursuant to the signature pages attached hereto and incorporated herein by reference.

3

4   Dated: _12/18/2023_

    PAMELA LANGLEY
5   Plaintiff

6

7   Dated: _12/18/2023_

    EDWARD MARQUEZ
8   Plaintiff

9

10  Dated: _12/18/2023_

    CHRISTINA MALMEN
    Plaintiff

11

12
    _12/22/2023 | 4:35 PM PST_
13  Dated: _____
    CITY OF SAN LUIS OBISPO Defendant
    By: _Erica Stewart_
14  Title: _Mayor of the City of San Luis Obispo_

15

16

17

18

19

20

**APPROVED AS TO FORM:**

Dated: 12/18/2023

*Sasha Aguilar*
SASHA AGUILAR
Plaintiffs' Attorney

Dated: 12/18/2023

LAUREN HANSEN
Plaintiffs' Attorney

Dated: 12/18/2023

BABAK NAFICY
Plaintiffs' Attorney

Dated: 12/21/2023 | 5:32 PM PST

CHRISTINE DIETRICK
City Attorney

SETTLEMENT AGREEMENT AND MUTUAL RELEASE
CASE NO.: 2:21-CV-07479 CJC
-18-

EXHIBIT A



# COMPASSIONATE ASSISTANCE, MITIGATION AND PREVENTION (CAMP) STANDARDS

## January 2024

# Contents

1.0 INTRODUCTION.................................................................................................... 4

   1.1 Statement of Intent ........................................................................................... 4

   1.2 Overview .......................................................................................................... 4

2.0 ENCAMPMENT SAFETY ...................................................................................... 5

   2.1 Behavioral Issues ............................................................................................ 5

   2.2 Mental Health .................................................................................................. 5

3.0 COMMUNICATIONS ............................................................................................. 6

   3.1 Internal Communications ................................................................................. 6

      Email Distribution Lists .................................................................................. 6

   3.2 PUBLIC INFORMATION................................................................................... 7

      Public Inquiries ............................................................................................. 7

      Media Inquiries ............................................................................................. 7

4.0 SITE ASSESSMENT ............................................................................................. 8

   4.1 Determine Jurisdiction ..................................................................................... 8

      Encampments on Public and Private Property ............................................. 8

   4.2 Determine Status ............................................................................................. 8

      Abandoned Encampments ............................................................................ 8

      Inhabited Encampments ............................................................................... 9

5.0 LEVEL 1: IMMEDIATE ACTION REQUIRED .......................................................10

   5.1 Identification ....................................................................................................10

      Imminent Risk ..............................................................................................10

      Hazardous Conditions ..................................................................................10

      Publicly Restricted Spaces ...........................................................................10

   5.2 Enforcement Key Components ........................................................................10

      Approval(s) ...................................................................................................10

      Documentation..............................................................................................11

      Outreach ......................................................................................................11

      Implementation .............................................................................................11

6.0 LEVEL 2: ADVANCE ACTION REQUIRED ..........................................................12

   6.1 Identification ....................................................................................................12

      Safety & Sanitation ......................................................................................12

      Time Restricted Open Spaces ......................................................................12

      Scheduled Project Site..................................................................................12

6.2 Enforcement Key Components .................................................................................12
Approval(s) ..............................................................................................................12
Documentation.........................................................................................................12
Outreach ..................................................................................................................13
Implementation ........................................................................................................13
7.0 LEVEL 3: MITIGATION REQUIRED...........................................................................14
7.1 Identification .........................................................................................................14
Escalation to Level 2 ...............................................................................................14
7.2 Enforcement Key Components .............................................................................14
Approval(s) ..............................................................................................................14
Documentation.........................................................................................................14
Outreach ..................................................................................................................15
Implementation ........................................................................................................15
7.3 Communication.....................................................................................................15
Notice of Level 3 Escalation ....................................................................................15
Addendum A: Jurisdiction Table (front) .......................................................................16
Addendum A: Jurisdiction Table (back) ........................................................................17

# 1.0 INTRODUCTION

## 1.1 Statement of Intent

The purpose of the Compassionate Assistance, Mitigation, and Prevention ("CAMP") Standards is to connect unsheltered individuals with shelter/housing solutions and critical services, coordinate cleaning of trash, hazardous items and debris from encampment sites, prevent health and safety emergencies at encampments, and restore and maintain the City's public spaces in a safe and accessible manner for all community members.

## 1.2 Overview

The following CAMP Standards apply to public property and unpermitted camps occurring on public property and are a sensitive social and legal issue. The City does not regard the CAMP Standards as a solution to homelessness; however, the standards provide a framework that City staff can utilize in the field to help reduce negative impacts to all community members. City staff are expected to exercise reasonable care and discretion when making decisions related to CAMP Standard implementation.

It is the City's responsibility to maintain environmental and regulatory compliance, as well as address community health, safety, and welfare concerns in accordance with the law. To uphold this responsibility, the City has established the CAMP Standards.

The City of San Luis Obispo is committed to working with nonprofit services providers and County experts on homelessness and to connecting individuals residing in the City's outdoor/public spaces with services, resources, and shelter.

The City's approach to implementing CAMP Standards focuses on:

1. **Assessment & Support:** City staff apply CAMP Standards and discretion based on the unique circumstances of each encampment site, and coordinate with City Outreach Resources (Community Action Team (CAT) and Mobile Crisis Unit (MCU)) in order to connect inhabitants with services that are relevant to their specific needs. City staff that are not trained in social services support including Police Officers, Ranger Service, and Public Works staff, refer unhoused individuals to 40 Prado Homeless Services Center (40 Prado) for emergency shelter. 40 Prado, in turn, is able to make referrals to other continuum of care partners and social services programs available within SLO County as appropriate. In instances where 40 Prado reaches full bed capacity, their case managers work closely with interested individuals to identify appropriate alternatives such as placement in other local shelters, family reunification, or being hosted by a friend.
2. **Agency & Opportunity:** Throughout the City's work, it recognizes the importance of reinforcing an individual's agency by providing a choice between opportunities, whenever possible.
3. **Accountability:** In order to track and appropriately report on the efforts connected to homelessness across City of San Luis Obispo divisions, all work performed on this effort should be recorded using the Survey 123 app.

# 2.0 ENCAMPMENT SAFETY

## 2.1 Behavioral Issues

Where City staff observes anyone engaging in unlawful activity, law enforcement or Ranger Service should be contacted to investigate. Homeless persons may not be penalized simply for being homeless. However, where their actions are unlawful, the City should enforce applicable regulations (e.g., consumption of alcohol, possession of drugs, starting fires, littering, etc.).

**Note:** Where open flames are observed, staff must ensure that flames are immediately and fully extinguished, issue citation (MC§15.04.090 (I)), and follow guidance as outlined in this document and department standard operating procedures.

## 2.2 Mental Health

The potential for mental and emotional illness and impairment are well documented in the unhoused/unsheltered community. According to the American Psychological Association, people without homes have higher rates of hospitalization for mental illness and substance abuse than other populations. Rates of mental illness among people who are homeless in the United States are twice the rate found for the general population. All members of City staff are to exercise reasonable care when working or interacting with individuals who display objective signs of mental or emotional illness.

Where City staff observes individuals experiencing homelessness exhibiting signs of mental and emotional illness and/or impairment, staff should contact the Community Action Team (CAT) or the Mobile Crisis Unit (MCU) to conduct an on-site assessment and refer to mental health services as appropriate. The CAT or MCU may arrange for transportation to mental health services facilities as requested. If CAT or MCU is not available and the situation presents a safety concern, staff should call dispatch (assess whether emergency or non-emergency is appropriate).

# 3.0 COMMUNICATIONS

Adhering to CAMP Standards requires coordination across multiple City, and sometimes County/State Departments. Additionally, enforcement of CAMP Standards may be viewed as controversial due to the general vulnerabilities of inhabitants who are experiencing homelessness. For these reasons, City staff engagement with CAMP Standards requires clear, accurate, and consistent communication. The following guidelines are intended to provide City staff with clarity about chains of communication and points of contact that ensure accurate and consistent information sharing.

## 3.1 Internal Communications

Engagement with encampments occurs across multiple City departments on a daily basis. In order to streamline communications related to upholding CAMP Standards, the City has developed an internal communications structure that relies on three key groups: 1) Field Operations, 2) Technical Specialists, and the 3) Steering Committee.



## Email Distribution Lists

When sending emails regarding CAMP Standards, please use the following distribution lists in outlook – this ensures everyone is kept in the loop without the need to enter each person's email address.

### *Steering Committee: "SC_Homelessness"*

Includes: City Manager, Assistant City Manager, City Attorney, Community Development Division Director, Housing Policy & Programs Manager, Homelessness Response Manager, Police Chief, Fire Chief, Parks & Recreation Director, Public Works Director, as well as the Communications Manager for awareness.

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153E49DE

*Field Teams Group: "TS_Homelessness"*

Includes: Homelessness Response Manager, Communications Manager, Rangers assigned to Homelessness Response, Public Works Deputy Director, Assistant/Deputy City Attorney, Police Lieutenant (Day Watch), Deputy Fire Chief, Public Works Maintenance Contract Coordinator, CAT Social Worker(s), CAT Police Officer(s), MCU Social Worker(s), MCU Emergency Medical Technician or Paramedic(s), City Biologist, and Code Enforcement Supervisor.

## 3.2 PUBLIC INFORMATION

Preventing and addressing homelessness requires a whole of community response and it is important to keep community members (whether vulnerable to, currently experiencing, or concerned about homelessness) informed with relevant, timely, and accurate information. For this reason, the City has a Communications Plan to increase public engagement. However, City staff are commonly asked to respond to public and media inquiries directly. Given the sensitivity of this topic, staff are advised to direct inquiries as follows:

### Public Inquiries

#### In-Person Inquiries

Field Operations Staff (Police Officers, Rangers, Parks Maintenance Workers) may receive inquiries from the public about the City's response to homelessness in the course of their daily duties. In these instances, staff are encouraged to refer inquiries (especially those pertaining to policy) to the Homelessness Response Manager.

#### Email Inquiries

For general inquiries, please refer to the Public Inquiry Response Templates: Homelessness document and use as appropriate. If staff has questions about how to respond to such inquiry, please contact the City's Communications Manager.

### Media Inquiries

In the past few years, changes in the law and availability of services in our region have evolved. It can be difficult for staff to stay current on these changes in real time. As such, City staff should direct media requests on topics related to homelessness to the Communications Manager and/or Homelessness Response Manager.

# 4.0 SITE ASSESSMENT

## 4.1 Determine Jurisdiction

*Who maintains the site?*

Maintaining public land is a responsibility that falls under several different entities in this region including City, County, and State organizations. For City owned and managed property and while implementing these CAMP Standards, it is important to both identify and notify the appropriate department(s) to respond. This both reduces potential for duplication of effort and simplifies communication with encampment inhabitants.

Please refer to Addendum A for a table that outlines jurisdictions by land, department, and point of contact.

### Encampments on Public and Private Property

Where there is an encampment on both public and private property, it is important to coordinate with Code Enforcement to ensure the private property owner is made aware of potential Municipal Code violations resulting from maintenance of an encampment on private property as well opportunities to collaborate on meeting CAMP Standards while remedying those potential Code violations. As such, the City Department that has jurisdiction over the affected public property should fill in the green highlighted section of the Notice to Correct Code Violation(s)/Notice Of Violation and send it as an attachment to the Notice of Multiple Jurisdiction Encampment email (see template below).

> *Notice of Multiple Jurisdiction Encampment*
>
> **TO:** code@slocity.org
> **SUBJECT:** Urgent: Multiple Jurisdiction Encampment
>
> **BODY:** The [Department] has identified an encampment at [location] [GIS parcel # if known]. Please find the Notice to Correct/Notice of Violation with completed [Department] section attached.

Code Enforcement will conduct a site visit to confirm the violation and, if confirmed, the completed Notice to Correct Code Violation(s)/Notice of Violation will be issued to the property owner.

## 4.2 Determine Status

*Is it abandoned or inhabited?*

Given that individuals often leave encampment sites during the day, it can be difficult for City staff to determine whether a site is currently inhabited or abandoned. The definitions below provide a general guideline to help staff in making this determination.

### Abandoned Encampments

When determining if property is abandoned, staff should evaluate the facts and circumstances surrounding the items. Items are considered abandoned if accompanied by objective indications of lack of ownership and ongoing use, for example:

- Cardboard is laid down without any sleeping implements on top.
- Items are strewn about and mixed with trash (empty bottles, used food containers, etc.).
- Items are covered by natural surrounding debris (leaves, dirt, etc.).
- Where Notice of Law Violation and Order to Remove Property has been provided to remove belongings and no contact has been made by the individual(s) indicating desire for City to temporarily store personal property and such property is left at site by posted deadline with no indication individual will be back to retrieve it.

### *Procedure for Abandoned Sites*

Refer to the City's Temporary Storage Guidelines when clearing items from the abandoned site.

### Inhabited Encampments

Staff should evaluate the facts and circumstances surrounding the items to first determine whether the site is inhabited.

**Attended**
Encampment inhabitants are present on site, items are considered attended.

**Unattended**
Encampment inhabitants are not present on site, but items are accompanied by objective signs of ownership and ongoing use, they are considered unattended (but not abandoned) – for example:

- Sleeping implements are visible (sleeping bag, tent, blankets/pillows).
- Items are stored in an orderly manner (i.e., packed up, folded, wrapped, or covered).
- Items appear clean of natural surrounding debris (leaves, dirt, etc.).
- Effort has been made to secure items (tied to post, bundled together, etc.).
- Owner has indicated they will return for the property.
- A third-party is present/nearby indicates that the owner will return for the property.

### *Procedure for Inhabited Encampments:*

Determine what level the site should be identified as and follow corresponding enforcement and communications guidelines.

#### Level 1: Immediate Action Required
The encampment poses an imminent risk to public health, safety, or security, and immediate action is required.

#### Level 2: Advance Action Required
The encampment poses a significant, though not imminent, hazard to public health, safety, or security that cannot be mitigated through procedures outlined under Level 3.

#### Level 3: Mitigation Required
This encampment does not pose an urgent safety concern but should be continuously monitored and will require mitigation such as trash collection to improve sanitation.

# 5.0 LEVEL 1: IMMEDIATE ACTION REQUIRED

**The encampment poses an imminent risk to public health, safety, or security, and immediate action is required. Imminent risk may be due to proximity to critical facilities or hazardous conditions that threaten the safety of those immediately inhabiting the space or the surrounding area. If resources do not allow for immediate action best practice is for staff to post a level 1 notice to inform inhabitants of the need to clear items and leave the site.**

## 5.1 Identification

Common examples of "Level 1" scenarios include, but are not limited to:

### Imminent Safety Risk

- Encampments that physically block or encroach into traffic, bike, pedestrian pathways, rail carrier property/right of way, culverts, or fire lanes
- Within 30 feet of the right of way with no protective barrier, or where there is a blind spot
- On or within 100 ft of an active public construction site
- Encampments that are located under a bridge or within a 30 ft distance of any part of a bridge structure
- Within 30 ft of an above ground high-pressure gas line
- Within 30 ft of a high voltage structure/facility, or other hazardous facility
- Within 30 ft of a water reservoir or water treatment facility

### Hazardous Conditions

- Flood Warning – As designated by the Public Works Director
- High Fire Danger– As designated by the Fire Chief

### Publicly Restricted Spaces

- Encampments that are located in an area that is closed to the public at all times or that are closed at certain times, and notices of such closure are properly posted at entry points, including but not limited to:
  - City Parks during nighttime closures
  - City Parks and other areas that are closed to the public for maintenance or restoration
  - City Open Spaces, including Bianchi, Filipponi, Prefumo Creek, Mathews Open Spaces, and fenced areas of Bob Jones Trail

## 5.2 Enforcement Key Components

Each department's standard operating procedures may vary but must contain these components:

### Approval(s)

Secure approval from point of contact responsible for this jurisdiction (see addendum A)

## Documentation

Log site into Survey 123 app as Level 1 upon first observation.

## Outreach

- Absent extenuating circumstances, responsible City staff should:
  - Perform and document verbal outreach with each inhabitant present on site.
    - Offer individual(s) opportunity to access emergency shelter and other services through a referral to 40 Prado. If individual(s) accept, document referral through Survey 123 app per GIS Data Collection Guidelines and, as time and circumstances allow, advise and/or assist individuals to fill out the 40 Prado online intake form.
    - As time or circumstance allows (**should not impede immediate action**): Coordinate with City Outreach (CAT/MCU) to conduct site visit.
- If resources do not allow for immediate action, best practice is for staff to post a level 1 notice to inform inhabitants of the need to immediately clear items and leave the site.

## Implementation

- Inform inhabitants of need and reason for immediate clean out.
- Document encampment information in Survey123 app, in accordance with CAMP Standards, including photographing the contents of encampment prior to removal.
- Follow the City's Temporary Storage Guidelines.

# 6.0 LEVEL 2: ADVANCE ACTION REQUIRED

**The encampment poses a significant, though not immediate, hazard to public health, safety, or security that cannot be mitigated through procedures outlined under Level 3. Requires 72-hour notice to implement CAMP Standards in coordination with CAT and/or MCU and absent extenuating circumstances, shall only be implemented when alternative shelter is available to those individuals in the encampment who are interested in seeking services (e.g., family reunification, CalWorks Housing Support, 40 Prado Homeless Services Center, ECHO, 5Cities Homeless Coalition, THMA, etc.).**

## 6.1 Identification

Common examples of "Level 2" scenarios include, but are not limited to:

### Safety & Sanitation Risks

- Encampments adjacent to public roadways or any other areas where an errant vehicle could enter the encampment.
- Encampments with excessive trash and debris creating potential risks to human life, safety, and the environment. This may include:
    - Accumulation of needles, drug paraphernalia, propane tanks or other fuels, feces, or other biohazards, especially when located in water ways, storm channels, or in travel lanes, including the path of bicycles or pedestrians.
    - An increase in the presence of rodents, animals, or insect infestations.
- Encampments where previous mitigation attempts have failed (per Level 3 protocol), and individual(s) have refused to cooperate with timely removal of large or dangerous items.
- Nothing herein shall preclude the immediate cleanup or removal of hazardous or dangerous materials as necessary to preserve public safety during the notice period (e.g., needles, chemicals, combustible materials, etc).

### Time Restricted Open Spaces

Encampments that are located in an area that has posted hours for public use.

### Scheduled Project Site

City staff or contractors need to perform routine maintenance, inspection, or other work at or near the encampment location which, if deferred, could affect service life or function of the facility.

## 6.2 Enforcement Key Components

Each department's standard operating procedures may vary but must contain these components:

### Approval(s)

Secure approval from point of contact responsible for this jurisdiction (see addendum A).

### Documentation

- Log site into Survey 123 app as Level 2 in real time.
- Prepare and Post Level 2 Notice of Law Violation and Order to Remove Property.
- Schedule City Outreach (CAT/MCU) for site visit to:

- o    Make offers to connect to services as appropriate for each individual present on site.
- o    Log types of services and to whom they were referred in Survey 123 app.

## Outreach

- Perform and document verbal outreach with each inhabitant present on site.
  - o    Offer individual(s) opportunity to access emergency shelter and other services through a referral to 40 Prado Homeless Services Center.
  - o    Document referral  in Survey 123 app, per GIS Data Collection Guidelines.
  - o    If accepted, advise and/or assist the individual to initiate referral process via 40 Prado online intake form (form can also be filled out in person if transport is requested)
    - ▪    If individual accepts the opportunity to access shelter but no shelter is available, staff should advise inhabitant that they will still be required to temporarily relocate to Public Property not currently subject to clean-out during the clean-out period to allow staff and/or contractors to clean the area and coordinate access to shelter or alternative accommodations through 40 Prado or other appropriate housing or shelter provider

## Implementation

Follow the City's Temporary Storage Guidelines.

- If the owner is cooperative but unwilling to collect and move their property, staff may exercise discretion through the following:
  - o    Collect and store personal items in accordance with the Temporary Storage Guidelines.
  - o    Grant additional time to collect and move property taking into account any special needs expressed to City staff by individuals present, and the volume of property over which an individual asserts ownership.
- If the owner is uncooperative and unwilling to collect and move their property, staff are advised to:
  - o    Call the Police Department for enforcement assistance.
    - ▪    The owner's refusal to remove items may be considered disorderly conduct and presence on the property may be considered trespass or violation of otherwise applicable provisions of the City's Municipal Code subject to enforcement.
    - ▪    Throughout this process the individual remains free to leave with or without removing their items from the property unless otherwise arrested or detained.
  - o    Collect and store any remaining personal items in accordance with the Temporary Storage Guidelines.

# 7.0 LEVEL 3: MITIGATION REQUIRED

**This encampment does not pose an urgent safety concern but should be continuously monitored and will require mitigation such as trash collection to improve sanitation.**

**During periods when local emergency shelters are closed to new intake, Level 2 Advanced Action automatically default to Level 3 Mitigation Required.**

**Level 3 Mitigation Required may be implemented at the discretion of city staff as they encounter encampments that do not meet the standard of a Level 1 or 2.**

## 7.1 Identification

Common examples of "Level 3" scenarios include, but are not limited to, sites where encampment inhabitants are making a diligent effort to:
- Obtain access to services including ID procurement, shelter accommodation, and case management.
- Maintain a clean encampment site through
  - Attempts to contain/organize items.
  - Trash collection or demonstrated cooperation with collecting/disposing of trash when provided with resources (trash bags and information on closest disposal location).

### Escalation to Level 2

- A Level 3 encampment may escalate to a Level 2 under two circumstances:
  - There are large or numerous encampments located in the same vicinity.
    - This poses significant safety and sanitation concerns as densely populated encampment sites result in higher fire risk, and present issues related to human waste/refuse, and/or
  - City Outreach (CAT/MCU) has conducted multiple site visits to offer services and engage in mitigation efforts, where encampment inhabitants refused to cooperate.
- If escalation is necessary during a period when shelters are closed to new intake, Department Director that has jurisdiction per Addendum A, must send a Notice of Level 3 Escalation (templated below).

## 7.2 Enforcement Key Components

Each department's standard operating procedures may vary but must contain these components:

### Approval(s)

None required. Level 3 Mitigation Action can be implemented immediately per City staff discretion.

### Documentation

- Log Site in Survey 123 app in real time.
- Send Notice of Level 3 Escalation if/when escalation to Level 2 occurs while shelters are closed to new intake.

## Outreach

- Perform and document verbal outreach with each inhabitant present on site.
  - Offer individual(s) opportunity to access emergency shelter and other services through a referral to 40 Prado Homeless Services Center.
  - If individual(s) accept, make referral via Survey 123 app per GIS Data Collection Guidelines.
- Schedule City Outreach Team (CAT/MCU) for site visit to:
  - Offer to connect to services as appropriate for each individual present on site.
  - Log types of services referred in Survey 123 app.

## Implementation

- Monitor closely and repeat assessments as needed. Allow encampments to remain for the time being while City Outreach Team (CAT/MCU) works on relocation solutions.
- Advise encampment inhabitants on items to keep/store/remove per City's Temporary Storage Guidelines.
- Provide trash bags and instruct individual(s) on where trash should be placed for proper disposal (i.e., nearby dumpster, or location where collection will be scheduled).
- If individual(s) refuse to remove items after being given adequate time to collect and move property considering any special needs expressed to City staff by individuals present, and the volume of property over which an individual asserts ownership.
  - Cite for remaining items as appropriate:
    - PC§374.4 (a) and/or
    - Creeks: MC§12.23.030(h)
    - Open Space: MC§12.22.050 (L)
    - Parks: MC§12.04.020

# 7.3 Communication

## Notice of Level 3 Escalation

To be sent by either Public Works or Parks and Recreation Department Director if/when shelter services are closed to new intake and a Level 3 encampment meets the standard of escalation to a Level 2.

**TO:** SC_Homelessness; TS_Homelessness
**SUBJECT:** Level 3 Escalation  [location]

**BODY:** Since [date] [Department] staff identified [#] encampment[s] located at [location] and worked with inhabitants per Level 3 Abatement CAMP Standards.  However, [increased occupancy of the site] AND/OR [repeated failed mitigation attempts] have/has caused an escalation to Level 2 Standard Action.
*Plan for Level 2 Escalation:*
- Where will inhabitants be permitted to stay during clean out?
- Where will inhabitants be permitted to stay after cleanout? (i.e. return to site, temporarily permitted to stay at different location, etc.)

# Addendum A: Jurisdiction Table (front)

| PUBLIC PROPERTY | | |
|---|---|---|
| Department | Location | Point of Contact |
| City of SLO Public Works | City owned parks, bridges, streets, sidewalks, culverts, and storm drains. | Maintenance Contract Coordinator or any designee of the Public Works Deputy Director |
| City of SLO Public Works | Areas adjacent to the railroad tracks based on the current agreement with Union Pacific Railroad | Maintenance Contract Coordinator or any designee of the Public Works Deputy Director |
| City of SLO Parks and Recreation | City owned open spaces (which includes portions of the San Luis Obispo riparian corridor). | Ranger Supervisor or any designee of the Parks and Recreation Director |
| Caltrans (not City of SLO jurisdiction) | Highways, on/off ramps, and State right-of-way (ex: Prado Triangle). | Caltrans<br>Use one of the following to notify Caltrans of encampment on Caltrans property:<br>• Call the District 5 dedicated line at (805) 441-5712<br>• Fill out a customer service request online at https://csr.dot.ca.gov/<br>• Download the mobile app "CT Service" to make a report from your phone. |
| PRIVATE PROPERTY WITHIN CITY LIMITS | | |
| Department | Location | Point of Contact |
| Police | Inhabited encampment on private property without permission of the property owner. Trespass (P.C. 602) | Internal Contact:<br>SLOPD Watch Commander<br>(805) 781-7312<br><br>External Contact:<br>911 or Non-Emergency Dispatch |
| Community Development | Inhabited and/or uninhabited encampment on private property that is not in compliance with City Municipal Code. Includes instances of private property owner permitting on-site camping. | Code Enforcement Supervisor |

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153E49DE

# Addendum A: Jurisdiction Table (back)

| MULTIPLE JURISDICTIONS | | |
|---|---|---|
| It is the responsibility of the Contacts listed for each Department to coordinate with each other when addressing encampments that are located across multiple parcels that are subject to multiple jurisdictions. | | |
| Departments | Location | Point of Contact |
| Parks & Recreation AND Public Works | Bike paths/bridges within or immediately next to City owned open space Ex: Prado Bridge/bike path and BJBT | Ranger Supervisor or any designee of the Parks and Recreation Director AND Maintenance Contract Coordinator or any designee of the Public Works Deputy Director |
| Parks & Recreation AND Community Development | City Owned Open Space AND Private Property EX: LOVR/Strawberry Fields | Ranger Supervisor or any designee of the Parks and Recreation Director AND Code Enforcement Supervisor |
| Public Works AND Community Development | City owned parks, bridges, streets, sidewalks, culverts, and storm drains. AND Private Property Ex: Santa Rosa Park & Commercial Property | Maintenance Contract Coordinator or any designee of the Public Works Deputy Director AND Code Enforcement Supervisor |

EXHIBIT B



# Temporary Storage Guidelines

## For Items Collected from Public Property

## January 2024

## Purpose and Scope

This document shall serve as guidance and direction for the City of San Luis Obispo as to standard protocol (absent special circumstances) when removing personal items from public property for temporary storage and retrieval. This guidance applies to relevant activities performed by Public Works and Ranger Service staff when they are working on City property. Information is summarized in the Storage Quick Reference Guide for City staff convenience.

## Site Assessment

Refer to the City's Compassionate Assistance, Mitigation, Prevention (CAMP) Standards for guidance on how to conduct an encampment site assessment to determine jurisdiction, as well as whether a site is abandoned or inhabited. Once you have completed the site assessment, please follow the appropriate procedure below.

## Storage for Abandoned Encampments

If a property is determined to be abandoned (see CAMP standards), the following guidelines should be observed if storing any abandoned items.

### Temporary Storage

City staff are not required by law to store items that are reasonably considered to be abandoned.  However, the City recognizes that possession of **ID, official documents, and prescriptions** may significantly impact an individual(s) ability to seek/receive assistance. In instances where these items are reasonably believed to be abandoned but are nonetheless visible (i.e., do not require sorting through property to discover), the City adopts a policy of compassionate assistance and requires staff to temporarily store these personal items.

### Storage Notification

Where ID, official documents, or prescriptions have been removed and stored from encampments reasonably believed to be abandoned, City staff shall notify the Directors of 40 Prado Homeless Services Center, El Camino Homeless Organization, and 5 Cities Homeless Coalition using the following template:

TO: CoC_Homelessness
SUBJECT: Abandoned Items

BODY: The City of San Luis Obispo has recovered [ID, official documents, prescriptions,] belonging to [Name] from an abandoned encampment site on [date].

If this individual is in your care, please advise them that to reclaim these items, they must contact SLO City [Parks & Recreation at: (805)781-7302] OR [Public Works at: (805)781-7220] to schedule an appointment.

The deadline to claim personal belongings is [date +90 days]. Any items that are not claimed by the deadline will be disposed of without further notice.

# Storage for Inhabited Encampments

If a property is determined to be inhabited (see CAMP standards), the following guidelines should be followed if storing any abandoned items.

## Attended Item Collection

1. Advise encampment inhabitants of items they should keep with them if at all possible:
   a. ID, Documents, Prescriptions, Cell Phone/Charger, Clothing, Sleeping Bag, Tools of a Trade (toolbox, art supplies, etc.)
2. Notify encampment inhabitants of Items That Will Be Discarded, Not Stored per this guidance.
   a. Items that are combustible, chemical, wet, soiled, sharp, dismantled, perishable, or trash including recycling will be discarded.
3. Ask the owner to identify what, if any, items they need stored.
   a. Refer to CAMP Standards for guidance on how to address cooperative vs. uncooperative/unwilling encampment inhabitants.
4. Inform encampment inhabitants that all closed containers they are requesting to have stored will be searched to determine whether contents meet storage guidelines. Any closed containers that inhabitant does not permit staff to search will be discarded, unless inhabitant chooses to take the items with them.
5. Provide owner with a Property Storage and Retrieval Information document before the owner leaves the site, stating the contact information and deadline for retrieving stored personal belongings.
6. Follow Procedure for Collecting and Storing Items below.
7. NOTE: Staff may discard any attended items the owner affirmatively states that they do not want, or any items listed under "Items That Will Be Discarded" (below).

## Unattended Item Collection

1. Staff must temporarily store personal property in an inhabited, but unattended, encampment unless it falls into one of the categories listed under "Items That Will Be Discarded, Not Stored."
2. Staff have permission to search closed containers with the intent of determining whether contents meet storage guidelines and or contain life sustaining items. If contents do not meet storage guidelines, staff can dispose of the container and all contents that are not life sustaining items.

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153E49DE

3. Where unattended property has been removed and stored:
   a. City staff shall fill out a Property Receipt listing items to be stored, the deadline by which items must be claimed, and contact info to schedule an appointment to claim items.
   b. Such notice shall be posted, as practical, in an open and obvious location where the property was removed.
4. Dispose of all items that are:  illicit, chemical, soiled, broken, dismantled, scrap, perishable, trash/recycling in accordance to guidance under Items That Will Be Discarded, Not Stored.

NOTE: Under no circumstances may staff take or keep for themselves unattended or abandoned personal items for their own use or allow non-City personnel to take such property for their own use.

# Items That Will Be Discarded, Not Stored

Items that present a health or safety risk to staff engaged in collection and storage will be discarded if not immediately removed by the property owner.

A. Contraband:  Consult with the San Luis Obispo Police Department for assistance in distinguishing contraband items from personal property subject to storage or evidence to be processed and retained by SLOPD.
B. Chemical: propane, combustible/flammable liquids (including alcohol), bleach, paint, oils, lead-acid batteries, etc.
C. Wet or soiled by infectious materials: human waste, body fluids, mold, mildew.
D. Broken/Dismantled/Scrap: for instance, bike parts, nuts/bolts, wires, etc.
E. Sharp: needles, knives, or any other materials with sharp edges that can pose a danger to staff in the process of carrying out storage.
F. Perishable: Food items
G. Reasonably believed to be trash (including recycling): Items that appear to have been discarded by their owner, such as broken appliances or broken furniture.

NOTE: Shopping carts are not subject to this policy and will be presumed to be the property of the business identified by markings on the cart. However, personal property inside a shopping cart shall be stored in accordance with this policy.

# Disposal Procedures

The following includes procedures for disposing of co-mingled items or hazardous materials.

## Comingled Items

If personal property is co-mingled or littered with needles, human waste, or other health risks, staff may dispose of the entire pile of property and are not required to sort through and attempt to remove the health or safety risks.

3

# Hazardous Materials

A hazardous material is defined as any substance or material that could adversely affect the safety of the public, handlers, or carriers during transportation.

1. Sharps
   a. Staff shall wear and use protective equipment including gloves, tongs, and sharps containers to safely and appropriately discard sharps found at encampment sites.
2. Other Hazardous Materials

For guidance on how to properly dispose of larger quantities of hazardous material (ex: 1gal propane) please contact the City's Hazardous Materials Coordinator, Maddy Bliss (mbliss@slocity.org).

# Procedure For Collecting & Storing Personal Items

City staff is required to wear appropriate protective equipment (i.e., puncture resistant boots, safety vest if close to traffic, body camera when possible), and follow the specific department's policies for safe practices for field and yard operations.

## Collecting Personal Items

1. City staff documents collection of personal items by completing a Property Receipt with the following information:
   a. Location
      i. Street address
      ii. Cross street/intersection
      iii. Approx. Distance to landmark
   b. Date: MM/DD/YY
   c. Item Quantity and General Description; Example: 1 black backpack, 3 books, 1 red sweatshirt
   d. Posting ID (generated by GIS app)
   e. Deadline To Claim Personal Belongings
      i. Day and Date that is 90 days from date of posting
      ii. Where 90 days lands on a weekend round up to the next available weekday to ensure staff availability.
      iii. Consider regular working hours and access to public transportation/storage facilities.
2. Original copies of completed Property Receipts are kept with either Ranger Service or Public Works Supervisors.
3. Carbon copies are left according to site status:
   a. Inhabited Attended: If owner of items is present but is unable or unwilling to move their property themselves, City staff will provide them with a carbon copy of the completed Property Receipt for any items collected and stored.
   b. Inhabited Unattended: Except as otherwise provided herein, if the owner is not present (i.e., items are unattended), staff will place a completed Property Receipt in the area from which the items are removed.

4

## Storing Personal Items

1. City staff delivers the items and the Property Receipt form to a designated and secure City facility.
2. Staff will intake items for storage through the following procedure:
3. Place items in storage bin and place copy of Notice to Remove Property or Property Receipt on top of items inside the bin.

# Retrieval of Items from Temporary Storage

- Personal items are stored at a designated and secure City facility.  After 90 days, unclaimed items are discarded without further notice.
- Owners are responsible for calling the department listed on their Property Receipt in order to arrange an appointment to collect items.
    a. Individuals may access phones free of charge at 40 Prado Homeless Services Center
- If an individual is detained due to arrest, hospitalization, or other unforeseen circumstances, they may request an extension of the 90-day storage deadline for up to an additional 90 days. Requests can be submitted via a phone call or written request to the department listed on their Property Receipt or Property Retrieval Information document. Verification of detainment may be required.
    a. The City does not have the storage capacity to retain personal property indefinitely. If an individual knows they are going to be detained for an extended period of time, they may authorize, in a written request to the City, another individual to retrieve their personal property. This authorized individual should be able to 1) identify (by name) the owner of the personal property, and 2) describe with reasonable accuracy the content of the stored personal property. The City will not store personal property beyond 180 days. If the detained owner or the authorized individual does not retrieve the personal property within 180 days of storage, the City will discard the personal property.
- Owners must provide satisfactory proof of ownership, i.e., describing the location where the items were and when collected, or describing specific items that were collected.
- No government or photo identification is required.
- City staff will regularly itemize and organize stored items.
    a. After 90 days, unclaimed items are discarded. City staff will record the date of disposal.
    b. Intake form is updated to note that the items went unclaimed.

## EXAMPLE PROPERTY NOTICE: FRONT

 **City of San Luis Obispo [Department]
PROPERTY RECEIPT**

The City of San Luis Obispo ("the City") [Department] has collected the following items from [location] _____ on [date]_____ and will store items that meet the City's Temporary Storage Guidelines for 90 days.

| Quantity | General Description (color, size, condition, etc.) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

To collect these items, you must schedule an appointment by calling the City [Department] at: **[phone number]** before the deadline below:

| DEADLINE TO CLAIM PERSONAL BELONGINGS |
|---|
| Date: |

**Please see the back of this notice for instructions on how to claim personal belongings that have been stored.**

DocuSign Envelope ID: 61224B32-1C85-4E1A-A47C-91C3153E49DE

## EXAMPLE PROPERTY NOTICE: BACK

 **City of San Luis Obispo [Department]
PROPERTY RECEIPT**

If you do not have a phone, you may access one free of charge at 40 Prado Homeless Services Center located at 40 Prado Road, San Luis Obispo, CA, 93401.

You must provide a detailed and accurate description of the items to prove that they are your personal belongings. This document alone does not constitute proof of ownership.

**Any items that are not claimed by the deadline will be considered abandoned and will be disposed of without further notice.**

Note: If you are detained due to arrest, hospitalization, or other unforeseen circumstances, you may request an extension of the 90-day storage deadline for up to an additional 90 days. Requests can be submitted via a phone call to the department listed above or a written request, which can be mailed to the address listed below:

City of San Luis Obispo Public Works Department
Attn: Maintenance Contract Supervisor
25 Prado Road
San Luis Obispo, CA 93401

OR

City of San Luis Obispo Parks & Recreation Department
Attn: Ranger Service
1341 Nipomo Street
San Luis Obispo, CA 93401

## STORAGE QUICK REFERENCE GUIDE

| STATUS | DEFINITION | STORE/DISPOSE/DOCUMENT |
|---|---|---|
| **Abandoned** | Items are abandoned if accompanied by objective indications of lack of ownership and ongoing use:<br>• No sleeping implements on site<br>• Items are strewn across area and mixed with trash<br>• Items are covered by natural surrounding debris (leaves, dirt, etc.) | 1) Where visible, store:<br>• Identification<br>• Official documents<br>• Prescriptions<br><br>2) Dispose of all other items on site.<br><br>3) Email notification to CoC |
| **Inhabited** | UNATTENDED: Encampment features objective signs of ownership and ongoing use:<br>• Sleeping implements are visible (sleeping bag, tent, blankets/pillows)<br>• Items are neatly folded and/or piled<br>• Items appear clean of natural surrounding debris (leaves, dirt, etc.)<br>• Effort has been made to secure items (tied to post, bundled together, etc.)<br>• Owner or third party indicates owner will return for personal property, | 1) Store life sustaining items including:<br>• ID<br>• Official documents<br>• Prescriptions<br>• Cell phone/charger<br>• Clean Clothing<br>• Clean Sleeping bag<br>• Work tools<br><br>2) Fill out Property Receipt and place carbon copy on site.<br><br>3) Dispose of all items that are: illicit, chemical, soiled, broken, dismantled, scrap, perishable, and/or trash/recycling. |
| | ATTENDED: Individual is on site and claims ownership over items in the immediate vicinity. | 1) Inform individual(s) of items they should keep with them:<br>• ID<br>• Official documents<br>• Prescriptions<br>• Cell phone/charger<br>• Clean Clothing<br>• Clean Sleeping bag<br>• Work tools<br><br>2) Notify individual(s) of storage restrictions:<br>Cannot be illicit, sharp, chemical, soiled, broken, dismantled, scrap, perishable, and/or trash/recycling.<br><br>3) Ask what, if any, items individual(s) want to have stored before they vacate the site and provide them with a Property Storage & Retrieval Information document<br><br>4) Fill out Property Receipt and leave carbon copy on site.<br><br>5) Dispose of remaining items. |

 # Temporary Storage Quick Reference

The City of San Luis Obispo does not store personal belongings left behind on private property or personal belongings reasonably considered to be abandoned on public property. However, the City recognizes the need for compassionate assistance when someone present cannot remove their belongings from public property. In these cases, the City will store certain belongings for up to 90 days. City staff will determine what to store based on what they reasonably believe falls within the City's storage guidelines. Below is a quick reference of what may or may not be stored.



## Items to always keep with you:

Identification      Official documents      Prescriptions      Clothing      Work tools

Cell phone & charger      Eye glasses      Sentimental Items      Sleeping bag

## Items that can be stored:

Books and journals      Intact bicycle      Neatly packed clothing and bags      Sleeping bag      Intact tent

*Please note that items must be in good working condition and not exposed, soiled, or damaged.*

## Items that cannot be stored:

Contraband      Chemicals      Wet/soiled clothes      Wet/soiled mattresses or bedding      Broken furniture      Dismantled bike parts

Scrap metal, wire, or wood      Combustables      Items reasonably believed to be trash/recycling      Perishable food      Sharps or weapons

www.slocity.org/homelessness                    Last updated: November 2022